## THE STATE OF KANSAS V. BEN. DOUGLAS.

1. INFORMATION—*Assault with Intent to Kill.* An information, under § 42 of the crimes act, charging the defendant with having assaulted, maimed, wounded, and disfigured with a knife, S., is not fatally defective because the words "maliciously" or "willfully" are omitted, where the information charges that the defendant did "unlawfully and feloniously" make the assault upon S., and did "feloniously strike him," etc.

2. ———— *Election between Counts.* It is not error for a trial court to refuse to compel the state to elect on which count of the information it will proceed when such information contains two counts, one under § 38 of the crimes act, and another under § 42 of the same act.

3. ———— *Instructions.* Where a trial court, in charging the jury, defines manslaughter in the third degree by giving substantially the statutory definition, except omitting the words "in the heat of passion," such omission is not prejudicial to the rights of the defendant.

4. ———— *Competent Witness.* A little girl of the age of nine years, who appears capable of receiving just impressions of the facts respecting which she is examined, and of relating them truly, is a competent witness. Her competency may be shown to the court during her examination as a witness.

5. INSTRUCTIONS, *Not Misleading.* The instructions and evidence complained of examined, and *held* not to be misleading or prejudicial, in view of the facts admitted upon the trial by the defendant.

### *Appeal from Republic District Court.*

BEN. DOUGLAS was convicted of an assault with intent to kill. He appeals. The opinion herein, filed July 6, 1894, states the material facts.

*T. M. Noble* and *N. T. Van Natta,* for appellant.

*John T. Little,* attorney general, and *Jay F. Close,* county attorney, for The State.

The opinion of the court was delivered by

HORTON, C. J.: Ben. Douglas was convicted of wounding Frank Scroggins, under such circumstances as would have constituted manslaughter in the third degree if death had ensued. (Crimes Act, § 42.) He was sentenced to the peniten-

tiary of the state at hard labor for the term of one year, and also adjudged to pay the costs of the prosecution. He brings his case here.

The information contained two counts, one under § 38 of the crimes act, and the other under § 42 of the act. A motion was made to quash the information, and compel the state to elect upon which count it would proceed to trial. These motions were overruled, and properly so. The provisions of §§ 38 and 42 of the crimes act, concerning assaulting or stabbing another, with intent to kill, maim, or disfigure, are so similar, and the evidence to sustain the separate counts so nearly alike, that it could not have been prejudicial to the defendant to refuse an election, even if one were necessary. (*The State v. Burwell*, 34 Kas. 312.) But no election was necessary.

As the defendant was found guilty under the second count only, it is not necessary to refer further to the first count. It is urged that the second count is fatally defective, because it did not state that the act was done "maliciously" or "willfully," or that like words were used. The information charged that the assault was made "unlawfully and feloniously," and that the defendant "feloniously struck" S. with a knife, being a dangerous weapon. The words "maliciously" or "willfully" are not found in § 42, and the count is not open to the objection made. "Feloniously," in a legal sense, means "done with intent to commit a crime." A felonious intent is "an unlawful and wicked intent." (*The State v. Fisher*, 8 Kas. 208; *The State v. White*, 14 id. 538.) That it was not necessary to describe more minutely the knife, which was the weapon used, and that the indictment was sufficient in form, see *The State v. Miller*, 25 Kas. 699; Kelley, Cr. Law, § 539; *The State v. Freeman*, 21 Mo. 481; *The State v. Burwell*, supra.) The verdict was not defective. (*The State v. Fisher*, supra.)

It is insisted that the court erred in its definition of manslaughter in the third degree. The court defined manslaughter in that degree substantially in the words of the statute, except it omitted, "in the heat of passion." This made the

instruction more favorable to the defendant than he was entitled to, and therefore the omission was not harmful.

It is next insisted that the court committed error in the definition of self defense. The only criticism to be made upon this instruction is, that the court connected with it by "or," an instruction of the circumstances under which the assault and wounding were excusable. (Crimes Act, §§ 9, 10.) But the claim that the part of the instruction as to what acts are excusable in the heat of passion or upon sudden combat modified or destroyed the definition of self-defense as given is not tenable.

It is further insisted that the court erred in allowing Ionia Walters to testify until the state showed affirmatively she understood the nature of an oath. At the time she gave her evidence, she was nine years old. During her examination she testified, among other things, as follows:

"Ques. Do you know the nature of an oath? Ans. Yes, sir; [to] tell the truth.

"Q. Who told you that? A. The Bible.

"Q. Well, now, supposing you should tell a lie — supposing you should not tell the truth — do you know what would be done with you? A. Be shut up in the state prison.

"Q. Who told you that? A. Read it in the fourth reader."

Section 323 of the civil code reads:

"The following persons shall be incompetent to testify: . . . Second, children under 10 years of age who appear incapable of receiving just impressions of the facts respecting which they are examined or of relating them truly."

The witness was an exceedingly bright child for her age, and her evidence must have impressed the trial court, as it does us, that she was "not only capable of receiving just impressions of the facts respecting which she was examined, but also of relating them truly." The witness was fully competent. Her competency was shown to the court during her examination.

Again, it is insisted that the trial court committed error in allowing Artie Walters to testify:

"Ques. Did your mamma know that Frank had been stabbed until you came and told her? Ans. No, sir."

Also, in permitting Mrs. Walters to be asked and answer the following question:

"Ques. When you started down to the field, had you been informed that Frank was stabbed? Ans. Yes, sir; I had."

And in allowing David McMullen to testify:

"Ques. Where were you going when you met him [Douglas]? Ans. Some one had sent the little girl up to tell me to go down; that Ben. had stabbed Frank, and he was bleeding to death; and I started to go down there, and went out on the section line, and I heard a horse coming down from around north, and I turned in that way and met Ben. there."

The evidence shows that Frank Scroggins was stabbed by the defendant, and no denial is made of this, the defendant claiming he acted in self-defense. Under all the circumstances, none of this evidence was so objectionable as to demand a reversal. Artie's statement was more in the nature of a fact than an opinion. Surely, this statement was not offered to corroborate her other evidence. It could not have had that effect. Mrs. Walters did not testify who told her Frank had been stabbed. The hearsay testified to by McMullen was of no importance, because he also testified in the same connection that, "When he met the defendant, he [the defendant] reached out his hand, and, as he did so, he said: 'I have ruined myself. I have stabbed Frank.' I said, 'What did you do it for?' And he said he did n't know, 'Something came over me.' I said, 'Come and go back and help get him up.' 'No,' he said, 'I am going for the doctor —for Doctor Stewart.' And I asked him the second time, and he said, 'I am going for Doctor Stewart.' And I went on."

The defendant testified:

"I started to throw off my coat, and as I throwed my coat

off from one shoulder and reached around to pull the other sleeve off, he [Scroggins] struck me on the side of the head, and then kicked me in the side.

"Ques. Kicked you in the side? Ans. Yes, sir.

"Q. And then what happened next? A. Why, as I was down, I turned around, and I looked up and saw him advancing toward me with his knife. I was down on one arm and one knee.

"Q. Down on your elbow were you? A. I can't state exactly how I was; I was on the ground.

"Q. He was coming at you with his knife? A. Yes, sir.

"Q. Did he have it open? A. Yes, sir.

"Q. Then what did you do? A. I jerked out my knife, as I was getting up.

"Q. And you jerked your knife out? A. He was coming at me, and says, 'God damn you, I will kill you.'

"Q. Did he do that while you were on the ground or after? A. I was getting up.

"Q. What did you do? A. He came at me and struck at me, and I knocked his lick off.

"Q. And then you pushed the knife into him? A. Yes, sir.

"Q. Did you hit him? A. I think I did.

"Q. How many times did you strike at him with the knife? A. Only one.

"Q. You know you hit him? A. Yes, sir; I know I hit him."

In the case of *The State v. Petty*, 21 Kas. 54, the identity of the person committing the shooting was in doubt; therefore the evidence in that case, which was erroneously received, was very damaging. The claim of the defendant was that, at the time the wound was inflicted, Scroggins was approaching him in a menacing attitude, with a knife in his hand; that he had reasonable grounds for believing Scroggins intended to use the knife; that his life or person was in imminent peril, and therefore that he was fully justified in defending himself. The following instruction embraced sufficiently the law constituting this defense:

"It is not every killing of a human being that is murder or manslaughter. A killing or homicide may be justifiable

43—53 KAS.

or excusable. In this case, even if Scroggins had died, and from the effects of the wound inflicted by defendant, that is, if he inflicted any, whether defendant would have been guilty of murder or manslaughter, or neither, depends upon all the circumstances attending the infliction of the wound. If it was in self-defense, under the definition of justifiable homicide, as above mentioned — that is, if Scroggins was attempting, without being attacked by defendant, to do the defendant some great personal injury, and there was immediate danger of such attempt being accomplished, or, even if there was not, the defendant honestly believed there was — defendant had the right to defend himself, and, in so doing, to do what to him seemed reasonable and necessary, and if he only so did, the injury, if any, by defendant to Scroggins would be justifiable and not criminal."

"A party assailed is justified in acting upon the facts as they appear to him, and is not to be judged by the facts as they are." (*The State v. Howard*, 14 Kas. 170, 175.)

The jury were the judges of the credibility of the witnesses and the weight of the evidence, and, upon a mere conflict of evidence, a verdict is conclusive, when approved by the trial court. We have examined all the other alleged errors, and find nothing therein to justify a reversal of the judgment.

The judgment will be affirmed.

All the Justices concurring.