Argued at Pendleton October 31, modified November 22, costs retaxed December 13, 1927.

## EARL F. CRANSTON *v.* G. E. STANFIELD ET AL.

### (261 Pac. 52.)

**Motions—Office of "Nunc Pro Tunc Order" is to Supply Inadvertent or Mistaken Omission of Action had, or to Enter Order Required as Matter of Course.**

1. The office of a *"nunc pro tunc* order" is not to create, but to speak what has been done, to supply an omission in the record, through inadvertence or mistake, of action really had, or to enter an order which should have been made as a matter of course and legal duty.

**Process—Court can Enter Order Filing Returns on Summons Nunc Pro Tunc.**

2. As it is court's duty to file returns on summonses, court could properly enter an order filing them *nunc pro tunc.*

**Appeal and Error—Appeal Did not Deprive Lower Court of All Jurisdiction Over Record so as to Preclude Order Filing Returns on Summonses Nunc Pro Tunc.**

3. Mere fact that appeal to Supreme Court has been perfected did not deprive Circuit Court of all jurisdiction over its record, so as to preclude it from entering order filing returns on summonses *nunc pro tunc.*

**Appeal and Error — Motion in Supreme Court to Correct Lower Court's Nunc Pro Tunc Order for Filing Returns on Summonses to Show Correct Date of Returns Should be Allowed.**

4. Motion in Supreme Court, after filing of appellant's briefs therein, to correct lower court's *nunc pro tunc* order, permitting filing of sheriff's returns on summonses, so as to show correct date of returns, should be allowed.

---

1. See 15 R. C. L., Judgments, § 63.

Process—Service of Process, not Entry of Return, Gives Court Jurisdiction.

5. It is service of process, not proof thereof by entry of return, that gives the court jurisdiction of defendants.

Appeal and Error—Supreme Court can Write Proper Decree on Appeal from Judgment in Contribution Suit, Where Circuit Court had Jurisdiction of All Parties; Trial Being De Novo.

6. Trial before Supreme Court on appeal from judgment for plaintiff in suit for contribution being *de novo*, Supreme Court can write proper decree, where Circuit Court had jurisdiction over all parties.

Evidence—Plaintiff's Testimony as to His Conclusion from Inquiries That Defaulting Defendants were Insolvent Held not Inadmissible as Hearsay.

7. In suit for contribution, wherein two of three defendants defaulted, plaintiff's testimony as to his conclusion from inquiries and investigation that defaulting defendants were insolvent *held* admissible as against objection that hearsay evidence rule was violated.

Contribution—Plaintiff's and Banker's Testimony Held Sufficient to Prove Insolvency of Defaulting Defendants in Contribution Suit.

8. In suit for contribution, wherein two of three defendants defaulted, testimony of plaintiff and banker, who had had business dealings with defaulting defendants, that they were insolvent and had no property from which plaintiff's claim could be satisfied, *held* sufficient to prove such fact.

Contribution—Facts Held to Show, in Suit by Director Satisfying Note for Contribution by Codirectors, That Loan was Made to Directors, not Corporation.

9. Directors' interest in corporation, latter's inability to obtain money on its own credit, and absence of its signature from note for money borrowed *held* sufficient to show that loan was made to directors individually and not to corporation, in suit by director satisfying note for contribution by codirectors.

Contribution—Complaint Alleging Plaintiff's Satisfaction of Note by Paying Accumulated Interest and Executing New Note Stated Cause of Suit for Contribution by Comakers.

10. Complaint alleging that plaintiff, in suit against other directors of corporation for contribution, satisfied note, executed by all of them, by paying accumulated interest and executing new note, stated cause of suit.

Contribution—Obligation Need not be Discharged With Money to Secure Contribution.

11. To secure contribution, it is not necessary that the obligation should be discharged with money.

---

5. See 21 R. C. L., Process, § 62.

Contribution—Director Satisfying Note Executed by All Directors Held Entitled to Shift Half of Burden to Only Other Solvent Director.

12. Corporation director satisfying note, executed by all directors, by paying accumulated interest and executing new note, *held* entitled, under doctrine of equitable contribution, to shift half of burden to only other solvent director.

Contribution—Judgment Should be Entered Against Insolvent Defaulting Defendants as Well as Single Solvent Defendant in Contribution Suit.

13. In suit for contribution, judgment should be entered against defaulting insolvent defendants as well as single solvent defendant, so that execution may be had against them, without resorting to another action or suit, should judgment ever become collectible.

Appeal and Error, 3 C. J., p. 1266, n. 11, p. 1268, n. 17 New. 4 C. J., p. 495, n. 89, p. 726, n. 17.

Contribution, 13 C. J., p. 823, n. 32, p. 825, n. 60, p. 835, n. 13, 19, p. 836, n. 35 New.

Evidence, 22 C. J., p. 205, n. 43.

Motions and Orders, 42 C. J., p. 534, n. 22.

Process, 32 Cyc., p. 497, n. 78.

From Malheur: DALTON BIGGS, Judge.

In Banc.

This is a suit for contribution. The facts are that the plaintiff, the defendant and appellant, Stanfield, whom we shall refer to as the defendant, and I. N. Ingle and J. B. Adrian, defendants, together with one W. G. Jenkins, were the stockholders of the Sumpter Gold Dredging Company. This corporation had purchased a dredger upon a conditional sales contract; a payment was about to become due; but the corporation's treasury was empty. All of the directors, with the exception of Jenkins held a meeting and discussed means of relieving their company from this predicament. Their discussion resulted in the four going to Mr. William Pollman, a banker,

12. Right of one who gives his personal obligation for a debt on which he was jointly liable with other to enforce indemnity or contribution from the latter, see note in L. R. A. 1915A, 898.

with a request for a loan.    From Mr. Pollman $3,250
was obtained; the four men gave their demand note
for that amount.

According to the testimony of both Mr. Pollman
and the plaintiff, the former later demanded of the
latter payment of the note, with the result that the
plaintiff paid Mr. Pollman $351.12 cash, being the
accrued interest, and gave a new note signed by him-
self only for the principal; he then received back the
note bearing the signatures of all four.    In the
original complaint neither Adrian nor Ingle were
parties; Stanfield alone was a defendant; he de-
murred on the ground of defect of parties; this de-
murrer was sustained.    Thereupon an amended com-
plaint was filed, in which both Ingle and Adrian,
together with Stanfield, appeared as defendants; the
amended complaint alleged the original note; that
upon Pollman's demand the plaintiff discharged it
by paying the accumulated interest and executing
another note; that both Ingle and Adrian were in-
solvent, but that Stanfield was able to pay.    The
prayer was for judgment against defendant for one
half of the interest paid and one half the face of the
note.    With the filing of the amended complaint the
court ordered that Ingle and Adrian be made parties
and that they be served.

The answer of defendant admitted the execution of
the original note, but denied all of the other allega-
tions of the amended complaint; by way of affirma-
tive defense the answer alleged that the corporation
was the borrower and the four individuals were only
sureties, and that they had previously agreed among
themselves, each should be liable to the one or more
paying only in their aliquot parts.    The reply denied
these allegations.

The decree recited that the default of Ingle and Adrian had been previously entered and gave plaintiff judgment as prayed for. This was followed by notice of appeal, the filing of an undertaking and the perfection of appeal in this court. After the appeal had been perfected, counsel for plaintiff discovered that the sheriff's return showing service upon Ingle and Adrian had never been filed. He thereupon moved the lower court for leave to file the sheriff's return *nunc pro tunc;* his motion was accompanied by an affidavit subscribed by his counsel, setting forth, that his residence was in Idaho; that he was unfamiliar with the methods of sheriffs in this state; that when the sheriff sent him the return of the summonses he assumed that they were copies sent to him through the courtesy of the sheriff for the benefit of his office files, and did not realize they were the original summonses; that therefore he did not file them. His affidavit was not controverted; the affidavit filed by the defendant set forth the perfection of the appeal and submitted that the Circuit Court was without jurisdiction to permit the filing of the returns.

After counsel for appellant had prepared their briefs and filed them in this court, counsel for plaintiff discovered another error to the effect that the lower court in preparing its *nunc pro tunc* order which permitted plaintiff to file the sheriff's returns as of the actual date, inserted March 25, 1923. This was manifestly erroneous, because the amended complaint was not filed until October 4, 1923. Plaintiff now moves this court for an order correcting this mistake; he accompanied his motion with an affidavit explaining how the error occurred; the affidavit is not controverted.                                          MODIFIED.

For appellant there was a brief over the names of *Messrs. Nichols, Hallock & Donald* and *Messrs. Davis & Lytle,* with an oral argument by *Mr. Blaine Hallock.*

For respondent there was a brief and oral argument by *Mr. Chas. H. Kahn.*

ROSSMAN, J.—1, 2. The first problem is, did the lower court have power to permit the filing of the returns of the summonses and to make the *nunc pro tunc* order. The office of *nunc pro tunc* order is "to speak what has been done, not create." *Cox* v. *Gress,* 51 Ark. 224 (11 S. W. 416). Or as has been stated by another court, "to supply an omission in the record of action really had, but omitted through inadvertence or mistake, or to enter an order which should have been made as a matter of course and as a legal duty." *City of Grand Rapids* v. *Coit,* 151 Mich. 109 (114 N. W. 880). Since it was the duty of the lower court to file the return upon the summonses the court could properly enter the order filing them *nunc pro tunc* if the perfecting of the appeal to this court did not deprive the Circuit Court of its power.

3. The mere fact that the appeal had been perfected did not deprive the lower court of all jurisdiction over its record. Thus it is stated in 2 R. C. L., Appeal and Error, Section 95:

"When an appeal with a *supersedeas* or stay has been taken the jurisdiction of the trial court is suspended as to all matters necessarily involved in the appeal. Accordingly, pending an appeal, the lower court, as a general rule, has no power to allow amendments of the proceedings. For example, pending an appeal from an order denying a motion to quash an

execution, the court has no power to allow an amendment of the execution. * * An appeal or writ of error does not, however, deprive the trial court of all power to act pending the appeal. Thus, though there are cases to the contrary, it is generally held that the pendency of an appeal or writ of error does not deprive the trial court of the power to correct its record so that it will speak the truth and truly set forth the proceedings as they actually occurred. Nor does the pendency of an appeal deprive the lower court of power to correct a mere clerical error in the entry of the judgment, though the correction of the error deprives the appellant of his ground of appeal."

This court has followed the liberal rule announced above, thus in *Helms, Groover & Dubber* v. *Copenhagen,* 93 Or. 410 (177 Pac. 935):

"An appeal does not deprive the trial court of all power to act pending the appeal. As a general rule, the pendency of an appeal does not divest the trial court of the power to correct its record so it will conform to the truth, and truly set forth the proceedings as they actually occurred."

In *State* v. *Estes,* 34 Or. 196 (51 Pac. 77, 52 Pac. 571, 55 Pac. 25), the problem presented was the following:

"The judgment having been entered in the circuit court in the above cause on March 6, 1897, the bill of exceptions was settled, allowed, and signed on April 3, and the appeal perfected April 29. At a subsequent term, to wit, on December 24, 1897, upon motion of the defendant, the bill of exceptions was amended over the objection of the appellant. The amended bill of exceptions has been certified up, and it is this additional record that appellant seeks to have stricken out. The question presented is whether a bill of exceptions which has been settled, allowed and signed by the trial judge can be amended at a subsequent term, and after an appeal has been taken and

perfected. * * The apparent object of the amendment was to make the record conform to the truth. The matters certified in the amended bill are in one or two particulars inconsistent with those contained in the original, and are of such a nature as that they might become of vital importance at the hearing. * * "

The court thereupon reviewed many authorities, but selected the more liberal rule and held that the lower court acted within its authority in allowing the amendment. In *St. Helens Lumber Co.* v. *Evans,* 90 Or. 71 (175 Pac. 612), it is said:

"It is well settled that it is within the discretion of the trial court after an appeal has once been taken, to cause papers omitted from the record to be attached thereto, and in the absence of any affirmative showing to the contrary it will be presumed that the court acted regularly and within the powers granted him."

And in *Brewster* v. *Springer,* 79 Or. 88 (154 Pac. 418) we find:

"Notwithstanding an appeal from a judgment may have been taken and perfected, jurisdiction of the cause is retained by the trial court sufficient to empower it, at any time before the appeal is heard and determined, to amend the bill of exceptions so as to make it conform to the facts."

In *Oregon-Washington Co.* v. *School Dist.,* 89 Or. 7 (173 Pac. 261), an appeal was taken from the decree of the Circuit Court; after the appeal had been perfected the lower court vacated its decree; it was held that the court has power to do so. Our procedure makes ample provision for the correction of errors so that the record before us will portray the truth of what occurred in the court below; it is deemed wiser to correct a record than to reverse the case

and thus cause the parties to set in motion from the beginning the ponderous machinery of a new trial.

4. A few illustrations of the various methods that have been resorted to to correct a mistake in the record are illustrated by the following cases: *West Coast Lumber Co.* v. *Brady,* 69 Or. 39 (137 Pac. 764); *Bloch* v. *Sammons,* 37 Or. 600 (55 Pac. 438, 62 Pac. 290); *Fisher* v. *Portland Ry. L. & P. Co.,* 74 Or. 229 (137 Pac. 763, 143 Pac. 992, 145 Pac. 277); *Overton* v. *Stocker,* 117 Or. 122 (239 Pac. 816, 246 Pac. 209). See, also, Constitution of Oregon, Art. VII, § 3c. The lower court was within its authority in permitting the filing of the return *nunc pro tunc.* We are likewise of the opinion that the motion filed with us to correct the lower court's *nunc pro tunc* order so that it will show the date correctly should be allowed.

5, 6. The Circuit Court acquired jurisdiction over Ingle and Adrian when they were served with process. The entry of the return of service merely placed upon the records evidence of the fact of service. "It is the service and not the proof thereof, that gives the court jurisdiction." *Blandy* v. *Modern Box Mfg. Co.,* 40 Idaho, 356 (232 Pac. 1095); *Wade* v. *Wade,* 92 Or. 642 (176 Pac. 192, 178 Pac. 799, 182 Pac. 136, 7 A. L. R. 1143). The Circuit Court therefore had jurisdiction over all of the parties, and was in a position to write the proper decree; we are in a similar position, because the trial before us is *de novo.*

7, 8. It is contended by the defendant that the evidence submitted by the plaintiff in proof of the insolvency of Ingle and Adrian was insufficient to establish his contentions. For us to set forth our consideration and comparison of the evidence upon this subject, and have it become a part of our permanent

reports, would needlessly consume space which should
be devoted to some better purpose.  We shall, there-
fore, content ourselves with the observation that the
evidence showed the plaintiff had made a thorough
investigation concerning Ingle, and had arrived, as
he testified, at the conclusion that Ingle was "broke"
and that a judgment against him would not be col-
lectible; he likewise testified that he had done much
business with Adrian and had made a thorough in-
vestigation as to his financial responsibility; that
Adrian's condition was the same as Ingle's; he testi-
fied that there were outstanding, unsatisfied judg-
ments against Adrian, one of which he held; he pro-
duced the judgment records showing this unsatisfied
judgment and two more against the Adrian Invest-
ment Company, the stock of which Adrian owned; the
plaintiff stated that this stock was worthless.  He
also testified that Ingle admitted to him his insol-
vency, and that Adrian owed plaintiff several thou-
sand dollars, the result of other transactions; further
that Adrian was indebted to various other persons,
and that he had many times declared himself "fire-
proof."  Mr. Pollman, a banker, who would be likely
to know the financial condition of men like Adrian
and Ingle, and who had had business dealings with
both, testified that Ingle was insolvent and had no
property out of which the plaintiff's claim could be
satisfied; he added that Adrian was in the same con-
dition.  Both Adrian and Ingle attended the trial as
witnesses for the defendant.  Neither they nor any-
one else controverted the above testimony.  We be-
lieve that this evidence was admissible and sufficient
to prove the insolvency of these two men.  When the
plaintiff was permitted to testify to the result of his
inquiries the hearsay evidence rule was not violated;

he did not pretend to testify what the persons of whom he made the inquiries said to him, but stated merely the fact of his inquiries; this was admissible: *State* v. *Wentworth,* 37 N. H. 196; Wigmore on Evidence (2 ed.), § 1789. Both the plaintiff and Pollman testified sufficiently to the materials upon which their opinions were based to make the latter admissible.

9. We have carefully read the evidence and believe that the loan was made by Pollman to the four men as borrowers, and not to the corporation. It is true that the corporation received the money; but it is also conceivable that the four men due to their interest in the corporation, and the corporation's inability to obtain money on its own credit, may have been willing to become the borrowers. The fact that the note does not bear the signature of the corporation is very persuasive that the men and not the corporation were the borrowers.

Likewise we do not believe that the evidence warrants the finding that before the four individuals· attached their signatures to the note they agreed that the limit of their liability in contribution should be one fourth.

10, 11. The complaint alleges that the plaintiff satisfied the note executed by all four, by paying Mr. Pollman the accumulated interest and executing a new note; we understand from the evidence that later the plaintiff discharged this new note with cash. To secure contribution it is not necessary that the obligation should be discharged with money: *Davis* v. *First Nat. Bank,* 86 Or. 474 (161 Pac. 931, 168 Pac. 929); Pom. Eq. Juris. (2 ed.), § 2340; 13 C. J. 823. We believe that the complaint stated a cause of suit.

12, 13. The situation thus disclosed by the record is one where all four signers were bound in the same

degree to the discharge of a common burden.   One of the four, the plaintiff, is now bearing the entire burden; two who should help in bearing the burden are insolvent; this defendant, however, is able to bear his just portion.   The doctrine of equitable contribution enables the plaintiff to shift one half of the burden which he is carrying on to this defendant.   The decree of the lower court enforcing contribution is therefore adopted by us as our own with this modification, however, that the two insolvent debtors should not escape contribution entirely; they may eventually come into such financial condition that they can bear their portion of the burden which their present financial condition renders it impossible for them to discharge; judgment should be entered against them so that in event it ever becomes collectible, execution may be had without resorting to another action or suit.   The Circuit Court will so modify its decree. Costs to neither party.                         MODIFIED.

BELT, J., did not participate in this decision.