Argued November 1, affirmed December 12, 1950

# STATE OF OREGON v. DOUD

225 P. (2d) 400

*Edward E. Grant,* of Enterprise, argued the cause for appellant. With him on the brief were Dixon & Burleigh, of La Grande.

*M. Keith Wilson,* District Attorney, of Joseph, argued the cause and filed a brief for respondent.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, HAY and WARNER, Justices.

ROSSMAN, J.

This is an appeal by the defendant from a judgment of the Circuit Court, based upon a verdict, which adjudged him guilty of the crime of having contributed to the delinquency of a minor and which ordered his imprisonment.

According to the State, the alleged crime was committed February 26, 1950, and its victim was a girl, six years and eight months of age at that time. For obvious reasons we shall not disclose the girl's name.

The defendant presents assignments of error which challenge
    1. "the failure of the Court to sustain the

motion of the defendant to set aside the indictment.''

2. ''the failure of the Court to sustain the objection to the offering of testimony against the defendant upon the ground and for the reason that the indictment does not state facts sufficient to constitute a crime.''

3. a ruling which permitted the purported victim of the crime to testify although ''her preliminary examination showed that she did not have sufficient understanding to be capable of receiving just impressions of the facts respecting which she was examined or of the nature of an oath.''

4. a ruling which permitted the mother of the purported victim to ''take part in her preliminary examination.''

5. the admissibility of all the testimony given by the purported victim because she testified without having been sworn.

6. a ruling which sustained objections to a question put to a witness called by the defendant to testify that the purported victim displayed a tendency ''to tell imaginary stories and to repeat what she has heard others say as her own experiences and statements.''

7. the refusal to give the instruction quoted in this assignment of error. [We will quote it later.]

8. the refusal to give the instruction quoted in this assignment of error. [We will quote it later.]

9. the refusal of the Court to instruct the jury to find the defendant not guilty.

We shall now consider the first assignment of error. The indictment which underlies the challenged judgment was returned March 17, 1950, by the grand jury for Wallowa County. A motion filed by the defendant sought an order setting aside the indictment upon the contention that although the grand jury which rendered it was impaneled during the May, 1949, term of the

court, ''no order was made in the Journal of said Court stating the reasons and continuing said Grand Jury to act during the November, 1949 term of said Court.'' No affidavit or other document was filed to establish the facts mentioned in the motion.

Section 93-260, O. C. L. A., provides that the terms of the Circuit Court for Wallowa County shall begin ''on the second Monday in May, and on the second Monday in November.'' Section 26-412, O. C. L. A., states:

> ''When the business of the grand jury is completed they must be discharged by the court; but the judge may in his discretion by an order made either in open court or at chambers anywhere in his district, and entered in the journal, stating the reasons, continue the grand jury, once drawn, in sessions during as many terms of the court as the judge may deem advisable.''

The order which overruled the motion reads as follows:

> ''1. That an oral order was made and entered by this Court on August 30, 1949, in open court and in the presence of said Grand Jury, that said Grand Jury would be continued as such for the November, 1949 term;
>
> ''2. That through inadvertence said order was not entered of record at that time, but that on December 6, 1949, the Court entered a nunc pro tunc order continuing said Grand Jury and ordered that the Journal of said Court so show.''

The order entered December 6 follows:

> ''IN THE MATTER OF
> THE GRAND JURY     ORDER
> OF     CONTINUING
> WALLOWA COUNTY,     GRAND JURY
> OREGON
> On the 30th day of August, 1949, the Grand Jury

returned into Court with one true bill, and presented a written report to the Court; and it then appearing to the Court that the Grand Jury had been in session only a few times and had had very little work, and that there was no reason for empanelling another grand jury, either at that time or for the November term, the Court announced to the Grand Jury, and orally ordered, that they would be continued as such, and would be excused until later notified to attend,

AND IT FURTHER APPEARING to the Court that this order was actually made in open Court on the 30th day of August, 1949, but through inadvertence was not entered of record; Now, Therefore,

IT IS HEREBY ORDERED that this order be entered in the Journal now, as of that date.''

■ The nunc pro tunc order entered December 6, 1949, was a proper device for entering in the journal the order made August 30, 1949: *Cranston v. Stanfield*, 123 Or. 314, 261 P. 52; 60 C. J. S., Motions and Orders, p. 54, § 57; and 37 Am. Jur., Motions, Rules and Orders, p. 513, § 30. The defendant does not challenge the verity of any fact mentioned in the order of December 6, 1949, nor does he controvert the right of the court to have made it.

We dismiss this assignment of error as lacking in merit.

We come now to the second assignment of error. In support of it, the defendant argues:

''The crime charged is a statutory one, unknown at common law, which necessarily requires a criminal intent and must be charged to have been done wilfully. Furthermore, the act charged is such that, although it would have constituted an assault and battery, it could not have amounted to the crime of contributing to the delinquency of a minor.''

■ The defendant concedes that "the statute under which the indictment was brought (Section 23-1034, O. C. L. A.) does not by its terms use the words 'wilfully' or 'intentionally'."

Section 23-1034, O. C. L. A., says:

"* * * any person who shall do any act which manifestly tends to cause any child to become a delinquent child, shall be guilty of a crime * * *."

It was held in *State v. Dunn*, 53 Or. 304, 99 P. 278, 100 P. 258, that "It is not essential to a conviction either to charge or to prove that the minor has become delinquent."

■ The primary purpose of statutes upon the subject of child delinquency is not to punish those who, through wrongful conduct, incline children toward delinquency, but to prevent the type of conduct condemned by the act which, if pursued, would be injurious to children and lead them upon a downward course. The welfare of the State demands that youth ripen into wholesome, useful citizenship.

■ We agree with the defendant that the crime denounced by § 23-1034, O. C. L. A., requires a willful act upon the part of the accused, but when the law employs the term "willful" in connection with such crimes it means nothing more than that the accused must have acted wittingly; that is, that there was a union or concert of action between his intent and his act. It does not, however, require an intention upon his part to violate a law or injure another. A positive willful intent to violate § 23-1034, O. C. L. A., is not an essential ingredient of the offense. It is sufficient if the act which the accused performed was willfully done.

The act specified in the indictment returned against the defendant is similar to the one described in the indictment mentioned in *State v. Stone*, 111 Or. 227, 226 P. 430. The two indictments are substantially alike except for the fact that in the present one the description of the alleged unlawful act is more detailed and the indictment employs the term "unlawfully and feloniously," whereas the one in the Stone case used the phrase "wrongfully, unlawfully and wilfully."

In *State v. Douglas*, 53 Kan. 669, 37 P. 172, the court said:

"* * * It is urged that the second count is fatally defective, because it did not state that the act was done 'maliciously' or 'willfully,' or that like words were used. The information charged that the assault was made 'unlawfully and feloniously,' and the defendant 'feloniously struck' S. with a knife, being a dangerous weapon. The words 'maliciously' or 'willfully' are not found in § 42, and the count is not open to the objection made. 'Feloniously,' in a legal sense, means 'done with intent to commit a crime.' "

*State v. Smith*, 119 Tenn. 521, 105 S. W. 68, says:

" 'Feloniously' is defined in the Century Dictionary as follows: 'With a deliberate intent to commit a wrongful act, the act being in law such as constitutes a crime of the class termed felonies.' In Webster's International Dictionary one meaning attached to the word is: 'In a legal sense, done with the intent to commit a crime.' "

From 36 C. J. S., p. 633, we quote:

"Feloniously. A term which has been defined generally as meaning having the quality of a felony; proceeding from an evil heart or purpose, done with a deliberate intention of committing a crime; wickedly and against the admonition of the law, that is, wickedly and unlawfully; with criminal

intent; wrongfully and with the intent of committing a felony or crime. Used in connection with an unlawful and forbidden act, the term signifies that the act was done knowingly and purposely, not accidentally or by mistake. The term imports intent, and a willful act; and has been held to include 'maliciously' and 'unlawfully.' "

The indictment in *State v. DuBois*, 175 Or. 341, 153 P. 2d 521, in charging the same crime as the instant one, employed the phrase, "unlawfully and feloniously." It did not include the word "willfully." That choice of phraseology provoked no comment by this court. The indictment in *State v. Dunn,* supra, in describing the purported criminal act, used the words "willfully and unlawfully."

Although in earlier times criminal law pleading attached so much importance to the use of particular terms that it almost seemed that the decisions were in quest of an abracadabra capable of dispersing all pleading problems, today we demand nothing more than that the indictment be couched in language which will inform the accused adequately of the charge which he must face. The law today demands that much and nothing less. For instance, § 26-703, O. C. L. A., says:

"The indictment must contain:
(1)  * * *
(2) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such manner as to enable a person of common understanding to know what is intended."

See, also, § 26-714, O. C. L. A. We think that a person of common understanding who was charged with having committed "unlawfully and feloniously" an act

prohibited by a statute would understand that the State believed that he had acted willfully. Of course, in phrasing indictments of this kind, it would be better to employ the terms "unlawfully and willfully", but "feloniously" includes within its ambit the two adverbs just quoted.

██ Finally, the defendant, in support of this assignment of error, as will be seen from the words of his counsel quoted in a preceding paragraph, urges that "the act charged is such that, although it would have constituted an assault and battery, it could not have amounted to the crime of contributing to the delinquency of a minor." Very likely many libertines accused of rape would like to make analogous arguments concerning their lustful acts and thereby reduce the charge against them to plain assault and battery. Rape, mayhem and homicide invariably have as their core an act of assault and battery. However, society may classify acts of assault and battery into separate categories dependent upon whether the unlawful act robs a woman of her virtue, takes from the victim one of his members or takes from him his life. In creating the crime of contributing to the delinquency of a minor, the law was more concerned with the children's morals and character than with possible incidental injury to their bodies. In cases of this kind the State must show that the defendant's act had a tendency to render the child a delinquent. That is an important element of the crime: *State v. Stone,* supra.

We find no merit in the second assignment of error.

We have quoted the third assignment of error and will now consider it. It attacks a ruling which permitted the little girl who was the purported victim of the alleged crime to testify. According to this conten-

tion, "she did not have sufficient understanding to be capable of receiving just impressions of the facts respecting which she was examined or the nature of an oath." Although that is the basis of this assignment of error, we notice that another assignment of error [No. 7] charges that error was committed when the trial judge failed to tell the jury:

> "I instruct you that in this case the State relies in a large part on the testimony of a six-year-old girl. She appears to be a girl of ordinary intelligence, capable of just impressions of the facts about which she was examined and of relating them truthfully, and I have allowed her testimony to be given to you to be given such weight as you consider it worth. * * *"

Section 3-103, O. C. L. A., says:

> "The following persons are not competent witnesses:
> 1. * * *
> 2. Children under ten years of age who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly; * * *."

Evidently the defendant was satisfied that the child was not disqualified; otherwise he would not have requested the instruction which we just quoted in part.

When the child was called to the witness stand the trial judge conducted a careful examination into her competency by subjecting her to questioning. Concerning a similar situation, this court said, in *State v. Jackson*, 9 Or. 457:

> "It is for the court, by means of a preliminary examination, to decide the question of their competency when they are offered as witnesses. * * * and the authorities are uniform in holding that its decision cannot be reviewed, unless a clear abuse of discretion is made manifest, or that the court vio-

lated some legal principle in the admission or rejection of the witness.''

See, to like effect, *State v. Bateham*, 94 Or. 524, 186 P. 5. We add that, in words to which the defendant made no objection, the instructions told the jury that it should give the child's testimony only such weight and credit as they believed it merited. The instructions pointed out that a child may be led and misled. We have read the transcript of the evidence with care, especially the narrative given by the girl. Evidently she possessed at least ordinary intelligence and was capable of expressing herself with facility. The crime, if it took place, occurred in a barn which the defendant held under lease. Several hundred feet from the barn was the dwelling house occupied by the defendant and his family, and beyond it was a public road which led to the home occupied by the child's grandparents, in which the little girl was temporarily living. The grandparents' home was about a quarter of a mile from the defendant's. The girl testified that when the defendant had released her she ran from the barn past the defendant's home and down the road on her way to her grandparents' house. In that statement at least, she was corroborated not only by the defendant's landlord, but also by the defendant and his wife. The latter overtook the little girl and brought her back to the Douds' home, that is, to that of the defendant. Her conduct, like the outcry of a woman who has been raped, was a significant item of evidence. We know of no abuse of discretion shown by this assignment of error, and the contention which underlies it lacks merit.

The fourth assignment of error is quoted near the beginning of this opinion. The purported victim of the alleged crime was called by the State as its first wit-

ness. When she had mounted the witness stand the presiding judge questioned her for the purpose of determining whether she was competent to become a witness. The results of preliminary examinations of that kind are not deemed evidence in the sense in which the word "evidence" is normally used. Preliminary examinations are not addressed to any issue mentioned in the indictment and, generally, consist of informal conversations between the child and the judge upon childhood themes for the purpose of placing the proffered witness at ease and of inducing her to talk naturally. It is expected that in the course of the examination the trial judge, by observing the mannerisms of the child and listening to her answers, will be able to appraise her intelligence and her capacity for revealing the truth. Manifestly, the courtroom scene projects the child into surroundings which she had never contemplated. In the unfamiliar scene virtually everyone around her is a stranger and all behold her with intentness and curiosity. Some at least, such as the defendant and his counsel, view her with unmistakable displeasure. Further, she realizes that before long she will be examined before all in the courtroom concerning matters of an intimate nature which she much prefers to keep to herself. The entire scene is frightening and disconcerting. Plainly, the circumstances demand that much must be left to the discretion of the trial judge as he proceeds with the delicate preliminary examination.

The record discloses that after the trial judge had asked the girl many questions, the following occurred:

"THE COURT: Perhaps you might ask her. What I am trying to find out—if she knows what will happen if she doesn't tell the truth.

"BY THE MOTHER: (standing between the girl and the jury box) What does happen to you when you don't tell the truth? What does mother do?

(No response)."

Thereupon three more questions were put to the little girl, the third of which brought an objection from counsel for the defendant. Although the objection is phrased in uncertain language, it seemingly was based upon a belief that the mother should not have been permitted to ask her daughter any questions. The objection was overruled with the statement: "This is only preliminary. We are trying to find out if she knows what it is to tell the truth." Thereupon the mother was permitted to ask a few more questions, followed shortly by others propounded by the trial judge and presently succeeded by some which were asked by the district attorney. The few questions propounded by the mother were of a type which either the judge or any of the counsel could have put to the girl who, evidently, was struggling to gain composure for the hard ordeal which lay ahead. None of the questions which were submitted to the child were in any way related to the issues which awaited trial, and none of them could have been harmful to the defendant. Although we are satisfied that, generally, no one but the presiding judge and counsel should be permitted to ask questions, yet we do not believe that there is anything in the record which shows that the trial judge abused his discretion. Certainly the defendant was not prejudiced by the course which was taken.

We find no merit in this assignment of error.

The fifth assignment of error claims that error was committed in receiving the testimony of the purported

victim without first having sworn her. No contention is made that the omission of the oath administration was intentional, and likewise none is advanced that anyone called the presiding judge's attention to the fact that he had failed to administer an oath. Those being the circumstances, the defendant, of course, presented no objection to the fact that the witness proceeded with her testimony without having taken an oath. It is possible that all had become so engrossed in the preliminary examination that they overlooked the fact that no oath was administered when the child was ruled competent as a witness. It may be that some of the questions which had been put to the girl about truth telling and others which exacted a promise from her to tell the truth were mistaken for an oath. Evidently no one realized that no oath had been exacted until after counsel for the defendant received the transcribed testimony, for we observe that no motion for a new trial was filed.

Section 3-101, O. C. L. A., declares:

"A witness is a person whose declaration under oath or affirmation is received as evidence for any purpose, * * *."

Section 3-402 says:

"An oath may be administered as follows: The person who swears holds up his hand, while the person administering the oath thus addresses him: 'You do solemnly swear that * * *.'"

As we have seen, the trial judge, after conducting a careful preliminary examination, held that the child was competent to be a witness, and we have also seen that the defendant, through the medium of the requested instruction which constitutes the basis of this

seventh assignment of error, referred to the girl in this manner: "She appears to be a girl of ordinary intelligence, capable of just impressions of the facts about which she was examined and of relating them truthfully." We add that the girl's testimony was corroborated in important phases by witnesses whose credibility is not assailed. Therefore, the testimony which is challenged by this assignment of error is attacked, not as having come from a discredited source, but only on the ground that an oath was inadvertently omitted.

It seems strange that the law, which many centuries ago discarded the ordeals of fire and of water as solemn farces, still insists upon administering an oath to an infant of such tender years that she is incapable of realizing the true significance of oath-taking and, likewise, of being incapable of indictment in the event that the prosecutor believes that her testimony was untruthful.

Some jurisdictions, in recognition of the incongruity of the situation just mentioned, have adopted remedial legislation. For instance, England, as long ago as 1885, enacted a statute applicable to prosecutions for the carnal knowledge of a girl under the age of consent whereby the victim "or any other child of tender years who is tendered as a witness, [and who] does not, in the opinion of the Court or justices, understand the nature of an oath," may give her testimony without an oath, provided the court believes that she "is possessed of sufficient intelligence to justify the reception of the evidence, and understands the duty of speaking the truth." See 48 and 49 Vict., Ch. 69, § 4. Evidently experience with the act demonstrated its merit, for later legislation relaxed the necessity for oath-taking

in other types of prosecutions. For example, St. 52 and 53 Vict., Ch. 44, § 8, provides that the oath may be omitted in offenses of cruelty to children, if the child "does not understand the nature of an oath." And the Children's Act (8 Edw. VII, Ch. 67, p. 30) contains a similar provision.

Canada has adopted legislation similar to St. 52 and 53 Vict., Ch. 44, § 8. See Revised Statutes of Canada, 1927, Ch. 36, § 1003. Citation to some of the more recent legislation by the provinces is given in VI Wigmore on Evidence, pocket part to § 1828.

Some American states have enacted legislation authorizing the reception of the evidence of children without subjecting them to an oath. For instance, Compiled Laws of Michigan, 1929, § 14222, says:

> "Whenever a child under the age of ten years is produced as a witness the Court shall by an examination, made by itself, publicly, or separate and apart, ascertain to its own satisfaction whether such child has sufficient intelligence and sense of obligation to tell the truth to be safely admitted to testify; and in such case such testimony may be given on a promise to tell the truth instead of upon oath or statutory affirmation, and shall be given such credit as to the Court or jury, if there be a jury, it may appear to deserve."

New York employs a statute which provides that in criminal proceedings when a child "actually or apparently" under twelve years

> "does not in the opinion of the Court or magistrate understand the nature of an oath, the evidence of such child may be received though not given under oath if in the opinion of the Court or magistrate such child is possessed of sufficient intelligence to justify the reception of the evidence. But no person

shall be held or convicted of an offense upon such testimony unsupported by other evidence; * * *."

See C. Cr. P. 1881, § 392 as amended by St. 1892, Ch. 279.

We have taken note of the above-mentioned legislation, not out of any belief that it has extraterritorial force, but because it shows that many jurisdictions recognize that a child, too immature to understand either the ecclesiastical or temporal nature of an oath, may, nevertheless, be a satisfactory source of the truth.

The validity of the New York act against an attack based upon constitutional contentions was sustained in *People v. Sexton,* 187 N. Y. 495, 80 N. E. 396, and *People v. Johnson,* 185 N. Y. 219, 77 N. E. 1164. The court in those decisions declared that it knew of no constitutional provision which rendered admissible the testimony of only those who were under oath. We, likewise, are unaware of any.

■ Since no constitutional provision is violated when unsworn testimony is received, there remains for determination only the question as to whether or not a defendant who offers no objection in the trial court may demand a reversal upon appeal of an adverse judgment which was based, in part, upon unsworn testimony.

Wigmore on Evidence, 3d ed., § 1819, says:

"This modern practice does not abate the ordinary rule that the failure to make an objection to competency at the proper time is a waiver (*ante* §§ 18, 486). Hence, if a witness who has not taken the oath is by inadvertence put on the stand, the opponent's *subsequent* discovery and *objection* should not avail; * * *."

The following is taken from 24 C. J. S., Criminal Law, § 1898, p. 879:

"A conviction will not be reversed for errors occurring in the conduct of the trial, where notwithstanding the errors, substantial justice has been done accused. * * * The rule has been applied also to irregularities and informalities in the oath administered to a witness for the prosecution; * * * to the failure to swear witnesses; * * *."

The rule to which we have been adverting is stated in the following manner in 58 Am. Jur., Witnesses, § 550, p. 307:

"Irregularity in failing to swear a witness is waived where he is permitted to testify without objection interposed, unless, according to the same authorities, the fact was unknown at the time."

*State of Missouri v. Hope,* 100 Mo. 347, 13 S. W. 490, 8 L. R. A. 608, has been much cited, always with approval. We take from it the following:

"The next assigned error rests on the claim that a witness testified on behalf of the State at the trial without having first been sworn. No objection on this ground was made at the hearing. It appears for the first time in the motion for a new trial, and nothing in the record shows when the fact was discovered by defendant or his counsel. Had the point been suggested when the witness began his statement or during his examination, the irregularity or oversight of permitting him to testify, unsworn (if it existed), could have been easily and promptly rectified. But it was not suggested. After the witness had been examined in chief he was fully cross-examined on the part of defendant. Thus was he treated by both parties as in all respects fully qualified to testify. It has been held by other courts, as well as our own, that where an oath is requisite to qualify a person as a trier of the facts or

of law, it may be waived by the competent parties in interest, either expressly (Howard v. Sexton, 4 N. Y. 157; Tucker v. Allen, 47 Mo. 488; Grant v. Holmes, 75 Mo. 109), or by going forward in the matter without inquiry or objection. Arnold v. Arnold, 20 Iowa, 275; Merrill v. St. Louis, 83 Mo. 244; Cochran v. Bartle, 91 Mo. 636, 8 West. Rep. 707.''

*Bassett v. Mechanics Bank of New Haven*, 166 Conn. 730, 166 Atl. 385, says:

"It is true the appellants claim, and the receiver seems to concede in his brief, that he was not formally sworn as a witness; but this fact appellants' counsel must have known and if they wished to raise any objection based upon it they should have called it to the attention of the trial court at the time, when any defect of this nature could have been remedied; not having done so they waived any such defect.''

In *People v. Krotz*, 341 Ill. 214, 172 N. E. 135, the court, referring to the fact that the prosecuting witness was not sworn, said:

''There is another reason why this objection of defendant cannot be sustained. No objection was made on the trial that the witness was not sworn. Defendant was represented by counsel, who cross-examined the witness without reservations. Even if it be conceded that the witness was not sworn, there is no showing that counsel did not know during the trial that she was not sworn.''

In *Beausoliel v. United States*, 107 Fed. Rep. 2d 292, it is said:

''Appellant's objection to the action of the court in permitting the witness to testify without being sworn is raised for the first time on this appeal. Moreover, it is neither contended on this appeal,

nor does the record suggest, that the fact was not known to appellant early enough so that he could have made timely objection. Under the circumstances, it comes too late.''

See, also, *Schaible v. Board of Adjustment,* 134 N. J. L. 473, 49 Atl. 2d 50; *Hudson v. State,* 207 Ark. 18, 179 S. W. 2d 165; and *State v. Collier,* 23 Wash. 2d 678, 162 P. 2d 267. The decision last cited was based upon an innovation to which a trial judge, with a bent for the appropriateness of things, resorted when he swore a juvenile by the name of Butch. He reasoned that the boy knew the meaning of ''promise'' but might mistake the connotation of ''swear''. Therefore, in administering the oath to Butch he rephrased it so as to substitute ''promise'' for ''swear''. The decision in well-reasoned passages sustained that action, as well as the judge's finding that Butch was a competent witness.

█ Many authorities, in addition to those which we have reviewed, are cited in the footnotes to the texts from which we have quoted. We have examined them and are satisfied that the quotations to which we have resorted correctly state the applicable rule. If the defendant had wished that the little witness should have been sworn, he should have been observant and should have mentioned the matter in the trial court. We are certain that had the matter then been mentioned an appropriate oath would have been administered. In all likelihood, it would have produced no different effect, for all thought that an oath had been administered. It is now too late to present the objection. This assignment of error is dismissed as lacking in merit.

█ A preceding paragraph quotes the sixth assignment of error, which complains because the testimony

of a witness concerning specific instances, offered for the purpose of discrediting the little girl, was ruled inadmissible. Our practice does not render evidence of that kind admissible: § 4-711, O. C. L. A. This assignment of error lacks merit.

■ We come now to the seventh assignment of error, which complains because the trial judge declined to give an instruction requested by the defendant pertaining to the manner in which the jury should scrutinize the testimony of the purported victim of the crime. We quoted a segment of this requested instruction in previous paragraphs. Section 5-308, O. C. L. A., says:

"In charging the jury, the court shall state to them all matters of law which it thinks necessary for their information in giving their verdict, but it shall not present the facts of the case, * * *."

Had the part of this requested instruction which we quoted in a preceding paragraph been given, it would have violated the section just quoted, which says, "it shall not present the facts of the case." The instructions fully and in well-chosen words gave the jury the rules for scrutinizing testimony which the defendant sought to invoke by this requested instruction. We find no merit in this assignment of error.

■ The eighth assignment of error complains concerning the refusal to give another of the defendant's requested instructions, the general purport of which was:

"The charge made against the defendant in this indictment is in its very nature a most heinous one and one which may well influence the mind and create a strong prejudice against the accused. It is a charge easy to make and hard to disprove, * * *."

We think that the equivalent of the requested instruction was given to the jury, and find no merit in this assignment of error.

■ The ninth assignment of error complains because the jury was not instructed to return its verdict for the defendant. We observe that the defendant's brief says:

> "Accepting the entire case of the state as true, the only crime showed was that of an assault, no more or less. That the act allegedly was repulsive and unpleasant is true; that the evidence of the state, if true, showed a crime is admitted. Nevertheless, it was not the crime of which the defendant was convicted."

The child's grandmother testified that when the little girl returned to her home, less than an hour after the alleged wrongful act, her happy nature had changed, she did not care for conversation and displayed evidence of mortification. Shortly she revealed the unhappy experience which she had undergone. We think that the evidence showed something more than a battery, and that the trial judge did not err when he declined to give this requested instruction.

The above disposes of all of the assignments of error. A careful examination of the record and of the principles of law applicable to this appeal convinces us that no error was committed. The judgment of the Circuit Court is affirmed.