ST. LOUIS, IRON MOUNTAIN & SOUTHERN RY. CO. *v.*
HAIRSTON.

Opinion delivered October 2, 1916.

1.  APPEAL AND ERROR—TESTIMONY OF UNSWORN WITNESS.—A cause will
    not be reversed because a witness was not sworn before being per-
    mitted to testify, where the omission was a mere inattention, and
    where appellant raised the question for the first time after verdict.

2.  TRIAL—PERSONAL INJURY ACTION—IMPROPER ARGUMENT—In an
    action against a railroad company for damages for personal injuries,
    it is improper and prejudicial for counsel for the plaintiff to state in
    argument to the jury that the defendant railroad company never
    admitted injury and liability in the same case, and was not honest in
    its defense.

Appeal from Pope Circuit Court; *M. L. Davis*, Judge;
reversed.

*Thos. B. Pryor* and *W. P. Strait*, for appellant.

1.  The verdict in this case is so greviously wrong
as to shock one's sense of justice.  70 Ark. 386; 34 *Id.*
632; 10 *Id.* 492.  Hairston's evidence was evidently false
and untrue as shown by all the evidence in the case.

2.  The verdict in this case was the result of the
improper and prejudicial remarks and argument of
counsel.  The admonition of the court did not cure the
error or remove the prejudice, nor did the withdrawal of
the improper remarks do so.  The transgression was
flagrant and the effect of the remarks were not removed
by the admonition of the court or retraction by counsel.
70 Ark. 308; 76 N. W. 462; 103 Ill. 333; 74 Ark. 259; 100
*Id.* 459; 77 *Id.* 238; 65 *Id.* 625; 75 *Id.* 468; 63 *Id.* 174; 74
*Id.* 210; *Id.* 239; 76 *Id.* 276; 65 *Id.* 389; 70 *Id.* 179; 76 *Id.*
370; 89 *Id.* 58; 87 *Id.* 461; 87 *Id.* 515; 81 *Id.* 25.

3.  The court erred in refusing instructions Nos. 8
and 9 asked for by appellant.  The master is not liable
for the independent acts of his servant, done outside the
scope of his employment.  93 Ark. 397; 101 *Id.* 586; 58
*Id.* 381; 77 *Id.* 606; etc.

4.  Appellee was a trespasser and the company
owed no duty except not to injure him wantonly or will-

fully or by gross negligence after his peril was discovered, etc.    45 Ark. 246.

5.    Dr. Smith, a witness was not sworn.    30 A. & E. Enc. of L. 910-911; 92 Ark. 150; 14 *Id.* 502; 22 *Id.* 86.

*Hays & Ward,* for appellee.

1.    The evidence in this case is conflicting, but the jury evidently and rightly believed the testimony for the plaintiff as to how the injury occurred, and this court will not disturb the finding, where there is any substantial evidence to sustain it.    102 Ark. 200; 101 *Id.* 121; 98 *Id.* 259; 94 *Id.* 165; 92 *Id.* 200; 91 *Id.* 425; 78 *Id.* 1, and others.    A verdict is final on review of facts.    89 Ark. 111; 90 *Id.* 100; 146 S. W. 855.

2.    It was within the scope of employment for a brakeman to see that persons other than the train crew did not ride on the cars.    It was the brakeman's duty to enforce this rule of the company and eject trespassers.    This was properly submitted to the jury.    100 Ark. 314; 90 *Id.* 19; 89 *Id.* 92; 146 S. W. 482; 75 Ark. 579; 58 *Id.* 381; 48 *Id.* 177; 42 *Id.* 542.

3.    Railway companies have been held liable for injuries to trespassers, resulting from threatening language which caused them to lose their presence of mind and fall from trains.    14 Pac. 172; 40 S. W. 932; 77 Am. St. 829.

4.    The remarks of counsel were but an expression of opinion; were promptly withdrawn and excluded by the court from consideration by the jury.    There could be no prejudicial effect upon the jury.    100 Ark. 437; 98 Ark. 87; 34 *Id.* 658; 20 *Id.* 619; 104 *Id.* 528; 89 *Id.* 92; 92 *Id.* 48; 90 *Id.* 406; 82 *Id.* 64; 73 *Id.* 73; 71 *Id.* 435; 48 *Id.* 123.

As to the remarks of Mr. Hays, made in answer to Judge Bullock's argument, it was a clear case of *invited error.*    122 Ark. 509; 112 Ark. 261; 104 *Id.* 528.

5.    The instructions properly presented the case to the jury.    100 Ark. 214.    They correctly define the measure of damages.    65 Ark. 619; 87 *Id.* 641; 81 *Id.* 187. Those refused were mere repetitions of those given.    104 Ark. 489; 97 *Id.* 405; 23 *Id.* 282; 16 *Id.* 184.

6. The facts testified to by Dr. Smith were undisputed and amply proven. His failure to be sworn was a mere oversight and his testimony was not material nor untrue. 98 *Id.* 228; 111 Ark. 159.

Smith, J. Suits were brought for Benjamin Hairston, a minor about eighteen years old, by his father as his next friend, and by his father on his own account, to recover damages to compensate a personal injury caused by a freight car of appellant's train running over and crushing one of the boy's feet. The suits were consolidated and tried together, and judgments for substantial sums—which, however, appellant does not complain against as excessive—were rendered in both cases.

The evidence in the case is sharply conflicting, and no attempt is made to reconcile it. According to the boy, his injury occurred under circumstances which warrant a finding of liability against the railroad company; while, according to the evidence of the company, there was no liability whatever. The cause appears to have been submitted to the jury under proper instructions, and under the well established rule that we do not pass upon questions of mere preponderance of the evidence, we would affirm the judgment of the court below as being sustained by legally sufficient evidence if only the question of the sufficiency of the evidence was involved. Seven witnesses testify as to the circumstances under which young Hairston was injured. According to his own testimony he had beaten his way on a freight train from his home in Morrilton to Russellville, and was returning home from Russellville in a box car, with two companions, all of whom were "beating their way." Two brakemen, who were stationed in the caboose about fifteen cars behind the box car in which appellee and his companions took passage, observed their presence there, and one of these brakemen, a man named Young, went to this car and ordered Hairston and his companions out of it. That this command was given him after he had told the brakeman that he had no money to pay him, but the brakeman, with profane language and menacing threats, compelled

him to climb out of the door of the car, and while he was so doing the brakeman threw some object at him which struck him on the forehead and rendered him unconscious, and when he regained consciousness he found that he had fallen under the train and that his foot had been crushed. He admitted that he had at first explained his injury by stating that the brakeman had kicked him in the face and caused him to fall. The almost physical impossibility of this last statement is apparent when the relative situations of the parties is considered, the brakeman being on top of the car while Hairston was climbing out of the side door. Hairston made no attempt to reconcile his conflicting statements except to say that when he made his first explanation he was only talking; while at the trial he was "swearing now."

According to the evidence of his two companions, Hairston debarked from the car in safety, and was injured as he attempted to catch another car. That Hairston was an expert in catching trains and had been seen frequently to catch trains running faster than this train was going at the time of his injury. These companions of Hairston are substantially corroborated by the brakemen, and also by a farmer and his son who witnessed the injury from their field where they were at work.

Some conflict appears in the evidence of witnesses for appellant as to whether Young's head was lying towards the north or the south as he looked into the car where the boys were riding, and much importance is attached to this discrepancy by counsel, who insists that because of it the jury disregarded most of the evidence which was in conflict with that of Hairston.

(2) It is urged that error was committed in permitting a doctor who had examined Hairston's injuries to testify without having been sworn. This question was raised for the first time after the verdict had been returned. Counsel explained the failure to raise the question earlier by stating that they were not advised of the fact sooner. The integrity of the trial cannot be thus defeated. The case does not present the question of a witness who was permitted to testify after refusing to be sworn or of

the grant of permission to a witness to testify without having first taken the oath prescribed by law. It is a mere case of inattention for which, no doubt, appellant is as much responsible as the appellee. At any rate, the error is one which appellant could easily have avoided, and it is, therefore, one of which it is now in no position to complain. Similar questions have been raised in regard to jurors who have been permitted to serve who did not possess the qualifications required by law, and in such cases it has been uniformly held that where no imposition was practiced, whereby the juror was permitted to serve, that complaint would not thereafter be heard when no effort had been made to elicit from the juror the facts from which his incompetency would have appeared. *Brown* v. *St. L. I. M. & S. R. Co.*, 52 Ark. 120; *James* v. *State*, 68 Ark. 464; *Casat* v. *State*, 40 Ark. 515. We must so hold in regard to this witness.

(2) The record contains the following recital: "In his closing argument to the jury, A. S. Hays, one of the attorneys for the plaintiff, stated to the jury: 'Gentlemen, Judge Bullock said we should all be honest. Yes, we ought to be. But I state to you that the defendant is not honest in this case and is trying to avoid payment of its just liability. Now, in the Burriss case the railway company admitted its liability but denied the plaintiff was injured. In this case, it admits the injury but denies the liability. No, gentlemen, the railway company don't admit liability and injury both in the same case.' " Whereupon the attorney for the appellant objected to the above statement, when Mr. Hays said: "I am making this statement in answer to Judge Bullock's remarks a while ago about honesty of the parties." An objection was thereupon overruled by the court. Whereupon Mr. Hays turned to the attorney for the defendant company and in a loud voice so that the jury could hear his remarks said: "Write it out; put it in the record. I stand upon the statement." Counsel for appellant at the time objected to this statement and asked the court to exclude it, which request was by the court overruled, and exceptions were duly saved. The Burriss case to which reference

was made was a personal injury case against the appellant company, and at the time the remarks quoted were made the jury in that case was still engaged in their deliberations.

Counsel for appellant insists that this improper argument was responsible for the verdict of the jury, and because of it the jury did not decide the case in accordance with the overwhelming preponderance of the evidence. No question arises oftener upon appeals to this court than that of some alleged improper argument. We have frequently announced the correct policy to be pursued by the trial courts in such cases, and have also frequently stated our own policy in such matters. The difficulty does not lie in defining the rule to be pursued in such cases, but is found in applying that rule to the facts and circumstances of the particular case. In 2 R. C. L. 425, it is said:

"It is the unquestionable privilege of counsel to indulge in all fair argument in favor of the contention of his client. But he is outside of his duty and his right when he appeals to prejudice irrelevant to the case. Properly, prejudice has no more sanction at the bar than on the bench. An advocate may make himself the *alter ego* of his client, and indulge in prejudice in his favor. He may even share his client's prejudices against his adversary, as far as they rest on the facts in his case. But he has neither duty nor right to appeal to prejudices, just or unjust, against his adversary, *dehors* the very case he has to try. The fullest freedom of speech within the duty of his profession should be accorded to counsel, but it is license, not freedom of speech, to travel out of the record, basing his argument on facts not appearing, and appealing to prejudices irrelevant to the case and outside of the proof. * * * * * * Where the admonition of the court does not prove sufficient to prevent improper and dangerous appeals to the prejudice of jurors, it becomes necessary rigidly to enforce the general rule that requires a reversal whenever the error is raised by a proper exception."

A very clear statement of the duty of the appellate court when reviewing the proceedings in the trial court is found in the opinion in the case of *Kansas City Sou. Ry.*

*Co.* v. *Murphy*, 74 Ark. 259, where Chief Justice Hill, speaking for the court, said:

"When the ruling of the court is presented to the appellate court in proper manner, then it is the duty of the appellate court to look to the remarks, and weigh their probable effect upon the issues; then to the action of the trial court in dealing with them; and if the trial court has not properly eliminated their sinister effect, and they seem to have created prejudice, and likely produce a verdict not otherwise obtainable, then the appellate court should reverse. However, a wide range of discretion must be allowed the circuit judges in dealing with the subject, for they can best determine at the time the effect of unwarranted argument; but that discretion is not an arbitrary one, but that sound judicial discretion the exercise of which is a matter of review. There is, however, a class of cases which present argument and remarks so flagrantly prejudicial, or counsel may be so persistent in their impropriety, that the commendable efforts of the trial judge to eradicate the evil effects of them will be unavailing. In such event, then, a new trial is the only way to remove the prejudice, notwithstanding the judge may have reprimanded, or even fined, the offending attorney, and positively and emphatically instructed the jury to disregard the prejudicial statements. In the final analysis, the reversal rests upon an undue advantage having been secured by argument which has worked a prejudice to the losing party not warranted by the law and facts of the case. In the one class of cases the reversal rests upon the abuse of the discretion of the trial judge in not confining the argument within its legitimate channel, and not properly instructing upon it or sufficiently reprimanding or punishing the offending attorney; and in the other or exceptional class rests upon the extremely harmful nature of the remarks which cannot be cured other than in a new trial upon the merits of the case freed of extraneous prejudice."

The rule thus stated has since been frequently approved and reversals or affirmances have followed accord-

ing to the effect of its application to the particular cases to which it was applied.

Appellees attempt to justify the argument of Mr. Hays upon the ground that it was invited error. It is said that Judge Bullock, in his argument for appellant, had erroneously injected into the case the question of Hairston's good faith and honesty, and that the argument was not, therefore, prejudicial, even though it was erroneous. But we do not agree that this is a case of invited error. The good faith and honesty of Hairston was raised by the evidence and was a proper subject to be considered by the jury in determining the weight to be given his evidence. By his own admission he had beaten his way to Russellville and was beating his way back on his return. He had testified to the material circumstances under which he sustained his injury and had admitted that his sworn statement conflicted with his previous unsworn explanation. The counsel was, therefore, within the record in recounting these circumstances as bearing on the witness' credibility. And this argument did not warrant counsel in stating that railroads never admitted injury and liability in the same case, and are not honest in their defense of claims and suits against them. The statement was not a proper one to make, even though it was true, and we know from official reports that the railroads do admit liability in many cases against them and that a considerable portion of the operating expenses of the railroads of the country is incurred in discharging claims of various kinds, some with and others without litigation. The finding of the jury in this case on the question of the preponderance of the evidence should not have been influenced by any consideration of the general policy of the railroad company in regard to other claims, yet the objection to the argument was overruled and counsel was permitted to say that he stood upon that argument.

It was improper, and in view of the closeness of the case, may have turned the scale in appellee's favor. And we, therefore, reverse the judgment.

McCULLOCH, C. J. (dissenting.)   I conceive it to be my duty, in reviewing the ruling of a trial court concerning an alleged improper argument of counsel to proceed on the assumption that the judge has endeavored with perfect impartiality to conduct the trial in such manner that both sides may receive fair treatment, and that he is in better situation than we are to determine how far, if at all, such argument has prejudiced the rights of the parties and what steps are necessary to eliminate such prejudice.   A very large degree of discretion must necessarily rest with the trial judge in such matters, and I assume that he has endeavored to fairly exercise it so as to preserve the integrity of the trial.

Of course, it is our duty, as reviewing judges, to correct a manifest abuse of such discretion by ordering a new trial.   But unless it is manifest that prejudice resulted from an improper argument, and that the trial judge has failed to do all that he could to eliminate the possibility of prejudicial effect, we should not reverse the judgment, however much we may be disposed to condemn the argument.   If we adopt the rule of reversing judgments merely because improper remarks have been made in the progress of the trials, we will increase very materially the number of reversals.

Now, the remark of Mr. Ward was withdrawn, and if it was calculated to prejudice the rights of appellant I fail to see the force of the criticism of his method of withdrawal.   What he said was, in effect, that he desired to commit no error to the prejudice of his adversary.   The original remark concerning the decisions of this court in other cases constituted merely his opinion, which could not, it seems to me, have prejudiced appellant's cause in the minds of an intelligent jury.

The argument of Mr. Hays was improper in that it constituted a criticism of appellant's conduct in other litigation, but it was not such an argument as was calculated to inflame the minds of the jury and induce them to render an improper verdict on the facts.   It is hard for me to believe that twelve fair-minded and intelligent men would be induced by such an argument as that, being

merely the counsel's own estimate of what constitutes honest dealing, to depart from their convictions concerning the effect of the testimony in the case and the law and to render a verdict which was unauthorized. We should not reverse a case merely because an error was committed, unless it appears reasonably probable that prejudice resulted.

Mr. Justice KIRBY concurs.