(No. 20094.— )

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CHARLES G. KROTZ, Plaintiff in Error.

*Opinion filed October 25, 1930.*

LOUIS GREENBERG, JOHN J. ENRIGHT, EDWARD H. ENRIGHT, and HYMAN FELDMAN, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, and MERRILL F. WEHMHOFF, (EDWARD E. WILSON, and JOHN HOLMAN, of counsel,) for the People.

Mr. COMMISSIONER PARTLOW reported this opinion:

Plaintiff in error, Charles G. Krotz, (herein referred to as the defendant,) was found guilty by a jury in the criminal court of Cook county of a statutory rape on Iris E. Darnell, a female under sixteen years of age. He was sentenced to the penitentiary for ninety-nine years, and the case comes to this court on a writ of error.

Iris E. Darnell testified that she lived in Broadview, in Cook county, from November, 1926, to September, 1928, when she moved with her parents to Melrose Park; that she was twelve years old, that she had never been married to defendant, and that she was in the sixth grade at school. She had known defendant for about one year while she lived with her parents in a flat in the rear of the flat of defendant, in Broadview. He was nice to her for about a year and gave her money and candy, sent her notes and came to school to see her. The first time he came to school was in the fall of 1927, when he took her for a ride around the block. The second time he took her to a lane in Maywood, told her how babies were made, and put his hands on her privates. Three days later he took her for a ride to the same place in Maywood, said he would show her the real thing about how babies were made, and then had intercourse with her. He took her riding another time on Mannheim road and had intercourse with her. During the summer of 1928 she received a note from him just before a picnic. At the picnic her father asked defendant about the note. Defendant promised he would not do anything wrong and asked her father not to tell anyone. In May, 1928, she visited her aunt. She saw defendant, who took her for

a walk and kissed her. In August, 1928, she worked for Mrs. Snyder, in Oak Park, and on August 15 defendant took her for a ride. On August 20, 1928, at 8:30 P. M., at Mrs. Snyder's house, he had intercourse with her on the landing leading to the basement. On August 27, 1928, at Mrs. Hart's, she sat up with defendant all night. He was arrested on May 7, 1928, for taking indecent liberties with her, and after he was arrested he asked her if she was going to testify against him. He saw her six times after his arrest and had intercourse with her once. In May, 1928, she first told about these acts of the defendant. She identified two letters received by her from the defendant, which were introduced in evidence.

A man by the name of Neely testified that the prosecuting witness is his niece; that she visited at his house a short time and that he saw defendant kiss her on an "L" platform, in Oak Park.

P. R. Darnell testified that he is the father of the prosecuting witness. He made complaint against defendant on May 7, 1928, for taking indecent liberties with his daughter. At a picnic he talked to defendant about a note which defendant had written to the prosecuting witness, and he asked the witness to forgive him. The prosecuting witness visited at her uncle's home, and in August, 1928, she worked for Mrs. Snyder, in Oak Park. On cross-examination this witness admitted that after he had made complaint against defendant he told him that if he had $300 he could get away; that the witness would settle for $300.

Dr. Minnie O. Perlstein, an assistant city physician of the juvenile court, testified that on October 2, 1928, she examined the prosecuting witness and found the hymen was ruptured; that there was no vaginal discharge and no evidence of pregnancy.

Neither of the two letters written by defendant to the prosecuting witness was dated but both were written after his arrest. The first one is as follows:

"*Darling Baby*—Harley is bringing you this message. If you prosecute me and do as Andy Borg and Mrs. Hess tell you, I must go to jail. So please stick to no and as Harley and I tell you. Then all will be O. K. They can't keep you locked up. I can take care of that. You will have a house with me for the rest of your life, and you know it. Now that I am all alone and Grace and I are getting a divorce everything is yours. So please stick to no, and love me as you always did, because my love for you will be forever, Honey. Andy Borg or Mrs. Hess, or your folks, are not going to care for you all your life, but I will, because you know I love every inch of you and always will stick with you, but please don't say in court that I harmed you. I want you and you want me. Please call me if you get a chance. With all my love, forever yours only, you know, and your Uncle Harley."

The second letter is as follows:

"*My own true darling and sweet wife*—Well, Honey Doll, Saturday is coming near, and all I want you to do is to stick to no and everything will be O. K. They are going to try to force you to say yes, but knowing you, but, Honey, you know what is best for both of us. If they put me away they will put you away too. So stick to no on everything but what they know. You can say you heard my machine in front of school and asked the teacher if you could go with me and come right back. I did not even kiss you then. Grace keeps on saying to me that if you get out of this scrape you are going to take Iris and run away with her, and just see, and I just say sure, you are right. Honey Doll, if they keep on, we will do, won't we, Bab? I am so lonesome for you and your darling hugs and I dream sweetly of you each night. Oh, if I could only be together. Are they going to have you examined or not? If not, lift your hands over your head again, then I will know. Your poor sweet mama. You and I sure are in hot water on account of Cliff, the darn titty. Now well, Honey, I don't think I will be able to write again before Saturday, but when you get there don't look at me and I won't look at you. But please stick to no on everything. With all my true love to my darling wife, and hope for luck for both person—I think it is—'from your own true darling. Kiss me and the world is mine.' Bye bye."

Defendant testified that he was thirty-eight years old; that in 1927 and 1928 the prosecuting witness lived with her father and mother in the rear flat of a building owned by him in Broadview; that he was friendly with the family until he was arrested in May, 1928, for taking indecent

liberties with the prosecuting witness. He denied having taken indecent liberties with her or having intercourse with her or having seen her at Mrs. Snyder's house. He testified that her father offered to have the case against him dismissed for $500 and later for $300.

The question of the weight of the evidence is not argued by defendant. It is not contended generally that the evidence, if true, does not support the verdict and judgment. The only contention in this regard is that the evidence does not show that there was penetration. The prosecuting witness testified to three acts of intercourse. As to the last occasion, at the home of Mrs. Snyder, she was questioned as follows: "Did he put his privates in your privates?" and she answered, "I don't remember." She was then asked, "Well, did he?" and the answer was, "Oh, yes; he did put it in and let the charge run on the steps." In *People* v. *Shultz*, 260 Ill. 35, it was held that proof of slight penetration is sufficient, and that fact may be shown by circumstantial evidence. In that case the proof was not as strong as it is in this case and it was held sufficient to submit the case to the jury. When the evidence of the prosecuting witness is considered in connection with the evidence of Dr. Perlstein it was sufficient to prove penetration.

It is insisted by defendant that the bill of exceptions shows that the prosecuting witness was not sworn before she testified, therefore her testimony is of no force and effect and is not entitled to any consideration by this court. This contention is not sustained by the record. It is apparent that the original bill of exceptions was not all prepared by the same person nor was it all written on the same typewriter. With the exception of the evidence of the prosecuting witness, her father and Neely, who were the first three witnesses called on behalf of the People, the evidence of all of the other witnesses is in regular form. It shows that the witnesses were sworn, in whose behalf

they testified, and each question and answer is given in detail. That is not the case as to the first three witnesses. In the bill of exceptions as originally prepared the evidence of the first three witnesses contained no heading except the name of the witness. From the evidence of the prosecuting witness was omitted her testimony that she was twelve years old, that she was never married to defendant, that she lived in Broadview from 1926 to September, 1927, and that the venue of the case was in Cook county. All of these omissions were interlined with pen and ink. The original bill of exceptions does not contain the questions and answers of these first three witnesses but it merely relates in narrative form the substance of their evidence. We refer to these facts for the purpose of showing that the bill of exceptions was not carefully prepared in the usual and customary way. As originally prepared it contained omissions of evidentiary facts, which, if not supplied, would have been fatal to the case of the People. Some of these omissions were supplied. The careless manner in which the bill of exceptions was prepared has some bearing in determining whether there was a sufficient showing that the prosecuting witness was not sworn. The evidence of the prosecuting witness as finally corrected is headed as follows: "Iris E. Darnell testified for the People." Then follows the substance of her testimony in narrative form. Webster's New International Dictionary defines "testify," "to make solemn declaration under oath." Bouvier's Law Dictionary defines it, "to give evidence according to law." Words and Phrases (vol. 8, 6932,) defines it, "to give evidence under oath or affirmation." Bouvier, and Words and Phrases, (vol. 8, 6933,) define testimony as "the statement made by a witness under oath or affirmation." To the same effect are *O'Brien* v. *State,* 125 Ind. 38, 25 N. E. 137; *Gannon* v. *Stevens,* 13 Kan. 447; *Nash* v. *Hoxie,* 59 Wis. 384; *Buckingham* v. *Barnum,* 30 Conn. 358. Where a bill of exceptions recites that a witness testified, in the absence of any

showing to the contrary the presumption of law is that he testified under oath or affirmation—in other words, that he was sworn. There is no affidavit or other affirmative evidence that the prosecuting witness was not sworn. The record does not show that the witness was not sworn, but, on the contrary, the record shows that she was sworn.

There is another reason why this objection of defendant cannot be sustained. No objection was made on the trial that the witness was not sworn. Defendant was represented by counsel, who cross-examined the witness without reservations. Even if it be conceded that the witness was not sworn, there is no showing that counsel did not know during the trial that she was not sworn.

In *State* v. *Hope,* 100 Mo. 347, 8 L. R. A. 608, 13 S. W. 490, it was said: "The next assigned error rests on the claim that a witness testified on behalf of the State at the trial without having first been sworn. No objection on this ground was made at the hearing. It appears for the first time in the motion for a new trial, and nothing in the record shows when the fact was discovered by defendant or his counsel. Had the point been suggested when the witness began his statement, or during his examination, the irregularity or oversight of permitting him to testify unsworn, if it existed, could have been easily and promptly rectified, but it was not suggested. After the witness had been examined in chief he was fully examined on the part of the defendant. Thus he was treated by both parties as in all respects fully qualified to testify. It has been held by other courts as well as our own that where an oath is requisite to qualify a person as required by law it may be waived by the competent parties in interest, either expressly or by going forward in the matter without inquiry or objection."

In *Moore* v. *State,* 96 Tenn. 209, 33 S. W. 1046, the court said: "While there is an affidavit of the prisoner

stating that he only became aware of the fact that this witness gave his testimony without being sworn, after the trial was concluded, yet the record is silent as to when his counsel discovered it. That there was irregularity in thus accepting this testimony is true, but it was one that would easily and promptly have been remedied by the court if attention had been called to it during the trial. The record discloses that after the examination in chief by the State he was turned over to the attorneys of the plaintiff in error, who cross-examined him as one fully qualified to testify. Having thus gone forward without inquiry or objection it must now be taken that there was an implied waiver of the oath of the witness, which is conclusive on the prisoner as well as the State."

In a note to section 264-B of Wigmore's edition of Greenleaf on Evidence it is said: "Whether he may [have a new trial] if a witness on the other side testified without having been sworn at all, *quære?* If the omission of the oath was known at the time it seems he cannot, but if it was not discovered until after the trial he may."

. In *Dreyer v. People*, 188 Ill. 40, it was held that failure to swear an officer to take charge of the jury is waived by the failure of the accused to object at the time, and the question is not open to review upon a writ of error although the point is urged as a ground for a new trial by motion supported by affidavit.

In *Lamb v. People*, 219 Ill. 399, it was held that the failure of the record to show that an officer was sworn to take charge of the jury, or that a sworn officer did take charge of the jury, cannot be considered where these facts are not shown by a bill of exceptions and it does not appear that the accused objected to the irregularity at the trial.

In *People v. Newsome*, 291 Ill. 11, it was said: "Counsel for plaintiff in error say they could not waive the objection because they did not know until after the trial that

the officer was not sworn. It is the duty of plaintiff in error and counsel to take notice of all the steps taken in the progress of the trial, and they have no right to stand by and permit irregular proceedings to take place and then argue such irregularities to be error. Counsel could have ascertained whether or not the officer was sworn, before the jury retired in the officer's charge, if proper steps had been taken to ascertain such information." To the same effect are *Goldsmith* v. *State*, 22 S. W. 405, *State* v. *Emile*, 74 So. 163, *Stair* v. *Smith*, 299 S. W. 660, and *St. Louis Railroad Co.* v. *Hairston*, 188 id. 838.

Under the above authorities, upon the showing made, the judgment cannot be reversed on the ground that the prosecuting witness was not sworn.

Defendant contends that the punishment is excessive. The statute fixes the punishment for rape at imprisonment in the penitentiary for not less than one year or for life, and the punishment is fixed by the verdict of the jury. While the verdict in this case is severe it is within the statutory limits. There is no contention that incompetent evidence was admitted, that improper remarks were made, that the jury were improperly instructed, or that the statute fixing the punishment is unconstitutional. The evidence shows that a married man thirty-eight years of age was guilty of rape on a child twelve years old. He was arrested in May, 1928. This did not serve as warning to him but he continued his attentions to the child and was guilty of assaulting her over three months after his arrest. This court cannot say that a punishment authorized by law is disproportionate to the nature of the offense unless the law itself is subject to that objection and is in violation of constitutional provisions. *People* v. *Elliott*, 272 Ill. 592.

Defendant insists that when the verdict was returned he made a motion for a new trial, which the court immediately overruled without a hearing, and that this was error. In support of this contention it is insisted that by this ruling

defendant was denied the right to call the court's attention to the various provisions of the Parole law, for the purpose of showing that the verdict fixing his punishment at ninety-nine years in the penitentiary was not permissible; that he was denied the opportunity of presenting to the court the fact that there was no evidence of penetration, and that the testimony did not prove him guilty of rape but rather of taking indecent liberties. In *People* v. *Moretti*, 330 Ill. 422, it was held that the refusal of the court to permit defendant's counsel to argue a motion for a new trial was not error where the trial was short, the questions few and simple and there was no showing of prejudice, and that the court's action in allowing the motion to be filed and then overruling it, preserved to defendant the same rights he would have had if the same action had been taken after extensive argument. In this case there were only five witnesses who testified for the People and one for the defendant. The evidence in the bill of exceptions covers only thirteen pages of the abstract. The questions of law were few and simple. No showing was made by defendant as to any fact not preserved by the record. The motion for a new trial was not overruled on the last day of the term, and if defendant had any affidavits to present to the court he had ample opportunity after that time to do so. All of the questions now urged for reversal are properly before this court for review and defendant's rights were properly protected.

We find no reversible error, and the judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*