Argued October 26; affirmed November 15, 1949

BAUM ET UX. *v.* DENN ET AL. AND FEDERAL
LAND BANK OF SPOKANE

211 P. 2d 478

*William D. Green, Jr.,* and *Avery W. Thompson,* of Roseburg, argued the cause and filed briefs for appellants.

*Carl M. Felker,* of Roseburg, argued the cause for respondents. On the brief were Geddes & Felker, of Roseburg.

Before Lusk, Chief Justice, and Belt, Bailey, Hay, and Page, Justices.

## BELT, J.

This is an appeal from a decree of the Circuit Court perpetually enjoining the defendants from interfering with plaintiffs in using a roadway over and across the land of the defendants. The Federal Land Bank of Spokane, the holder of a mortgage on the land, was made a party defendant, but it made no appearance as its interests could in no way be affected by the suit for an injunction.

The road in controversy is on land owned by defendants Joseph A. Denn and Annabelle Denn Wiles, but defendants Henry Denn and his wife are in possession thereof under some interest not disclosed by the record. The Denn house is about two miles west from the Roseburg-Coquille highway where it crosses the middle fork of the Coquille river. The plaintiffs

are the owners of the Northwest quarter of the Northwest quarter of Section 35, Township 29 South, Range 9 West of the Willamette Meridian, Douglas county, Oregon, which adjoins the Denn land on the west and the south. There is a map of the township introduced in evidence showing the various owners of land in and about Camas Valley, but there is no map of the road in controversy. We think, however, that the above general description will suffice for the purpose of this appeal.

The plaintiffs and their predecessors in interest had, with the express consent of the defendants, used this dirt road—"just swamped out through the woods"—for over twenty years. There is some testimony that this road was the only means whereby the plaintiffs and the homesteaders "further back" could reach the county road. The plaintiffs obtained permission to use the road in 1921. On October 30, 1941, an instrument was executed, purporting to grant plaintiffs a right of way over the road for a period of one year from the date thereof. It was not until 1942 that the defendants objected to such use by putting three logs across the road. Soon after this obstruction to the road occurred, the plaintiff, Claude A. Baum, and Oren Standley, in December, 1942, through their attorney, Mr. Paul Geddes of Roseburg, Oregon, instituted a proceeding for a gateway or way of necessity (§§ 100-1501 to 100-1505, O. C. L. A.) located substantially the same as the road in controversy. The defendants employed Mr. Ray B. Compton, an attorney also from Roseburg, to appear for them in the gateway proceeding. It is quite evident that the defendants strongly objected to a gateway being established, as it would permit the use of the road by the public. Pursuant to instructions from

his clients, Mr. Compton, in January, 1943, began negotiations with Mr. Geddes in an effort to bring about termination of the gateway proceeding. These attorneys are in accord as to the oral agreement entered into by them as a result of their negotiations. The substance of the agreement was that in consideration for ceasing to prosecute the gateway proceeding, the defendants would grant to the plaintiffs the right to use the roadway in question, and that "a private easement would be defined in order that no future trouble might arise." Unfortunately, this agreement was never reduced to writing as counsel were unable to get the parties together to sign the agreement. Mr. Geddes testified:

"A * * * The agreement between us on behalf of our respective clients was that the gateway road proceeding would be permitted to be dropped or lapse and that the Baums would have a right-of-way or easement across the Denn property for the purpose of going to and from their ranch. The consideration for the dropping of the gateway road proceeding was the giving of this right-of-way which, it was agreed between us, had already been established by a long period of use.

" * * * *

"Q Mr. Geddes, was your agreement with Mr. Compton concluded or is it still in the process of negotiation regarding the right-of-way?

"A All negotiations were ended and a complete understanding was arrived at. The only thing that remained to be done was the reduction of the agreement into writing and the signatures of the parties to that right."

Mr. Compton testified that he was employed by the defendants to represent them in the gateway proceeding, and that he was instructed by them "to convey certain information and to lay certain evidence before

Mr. Paul Geddes with the view to trying to settle this gateway road proceeding which he started." Mr. Compton also testified that he was expressly authorized to communicate to Mr. Geddes the statements made to him by his clients for the purpose of ending the gateway proceeding.

Mr. Geddes advised the plaintiffs that, based upon the agreement above mentioned, they would have the right to use the road as a means of going to and from their farm. The gateway proceeding was "permitted to lapse and was not prosecuted."

The plaintiff Mrs. Baum testified that prior to the commencement of the gateway proceeding, she and her husband lived in a tent on their property; but after the right of way over the road was granted, "we went ahead that spring and summer and built a five-room modern house and two poultry houses, garage, granary and woodshed," costing approximately four thousand dollars. The plaintiffs continued to use the road until a cable was placed across it on Christmas day in 1944. Mrs. Baum said that the cable was woven through the gate with a padlock on each end. It would seem that whoever selected Christmas day as the time to shut his neighbor off from using the road was not, to say the least, much imbued with the spirit of "Peace on earth, good will toward men." When this obstruction occurred, the plaintiffs, in January, 1945, commenced the instant suit to obtain a restraining order. The decree from which this appeal is taken was not rendered until April 8, 1948. So it was that the bitter controversy over this old road dragged on.

■ It is clear that no easement by prescription over this road was acquired by plaintiffs. Their use of the road prior to the alleged agreement in January, 1945,

was merely permissive in character. There was no adverse user of the road during that time. A prescriptive easement can never ripen out of mere permissive use no matter how long exercised. *Minto v. Salem Water, Light & Power Co.*, 120 Or. 202, 250 P. 722. As stated in 17 Am. Jur., Easements, 978, § 67:

> "User under an adverse claim of right is requisite to the acquisition of an easement by prescription. The rule is well settled that use by express or implied permission or license, no matter how long continued, cannot ripen into an easement by prescription, since user as of right, as distinguished from permissive user, is lacking."

■■ We are convinced that an oral agreement was made by Geddes and Compton, who are reuptable attorneys, that plaintiffs would have an easement in consideration of their cessation of prosecution of the gateway proceeding. There is no merit in the contention that the evidence of Compton relative to communications of his clients is inadmissible as being in violation of § 3-104, subd. 2, O. C. L. A., which provides:

> "An attorney shall not, without the consent of his client, be examined as to any communication made by the client to him, or his advice given thereon, in the course of professional employment."

This statutory rule is solely for the protection of the client who is enabled thereby to disclose to his lawyer matters of utmost confidence and importance without fear of having his trust violated. The reason for the rule, however, has no application where the lawyer is expressly authorized to communicate to an opposing counsel matters to be considered in negotiations for settlement of a controversy. The client cannot authorize his lawyer to speak for him in dealing with

third persons, and then undertake to seal his lips as to what transpired. Under such circumstances no confidential communication is involved. As said in 58 Am. Jur., Witnesses, 274, § 419:

> "Communications made to an attorney for the purpose of being conveyed by him to others are stripped of the idea of a confidential disclosure, and, therefore, are not privileged." Citing numerous authorities in support of the text.

Also to the same effect see: 70 C. J., Witnesses, 426, § 569; 1 Thornton, Attorneys at Law, 208, § 118; *Franzen v. Shenk*, 192 Cal. 572, 221 P. 932; *Moran et ux. v. Thurman*, 127 Kan. 688, 275 P. 160; *August v. Burns*, 79 Mont. 198, 255 P. 737; *Koeber v. Somers*, 108 Wis. 497, 84 N. W. 991, 52 L. R. A. 512. There is no authority in this jurisdiction to the contrary. Many cases have been cited by appellants, but none of them involve a factual situation wherein an attorney has been expressly authorized by his client to communicate statements made by him to a third person not the agent of the attorney or of the client.

■■ Having found that there was a parol license for plaintiffs to use the road, it remains to be seen whether such license has become irrevocable by reason of the plaintiffs having made permanent and valuable improvements in reliance thereon. In most jurisdictions a parol license to use land may be revoked by the licensor, as it creates no interest in the land and is not governed by the Statute of Frauds; but in this state— in keeping with the minority rule—such license becomes irrevocable if, in reliance thereon, the licensee makes permanent and valuable improvements. The question of an irrevocable license was well considered in the leading case of *Heisley et al. v. Eastman et al.*,

102 Or. 137, 157, 201 P. 872, wherein the court, after a thorough review of the authorities, said:

> "An oral and gratuitous permission when acted upon by the expenditure of a considerable sum of money in the construction of valuable improvements, which have been made on the faith of such permission and would not have been made in the absence of such permission and would be either destroyed or materially lessened in value by a revocation of such permission presents a situation making the doctrine of equitable estoppel peculiarly applicable * * *."

The court in *Willson v. Watts*, 156 Or. 134, 138, 66 P. (2d) 1172, again in reviewing the subject, stated:

> "A license like the one granted by plaintiff to defendant becomes irrevocable when the licensee, in good faith and in reliance upon the agreement, makes such valuable and permanent improvements that the revocation thereof would amount to fraud, or the improvements would either be destroyed or materially lessened in value by the revocation of the license." Citing numerous authorities in support thereof from this jurisdiction.

We think the evidence, although conflicting, shows with reasonable certainty that plaintiffs relied upon the agreement relative to their right to use the roadway and made the improvements above mentioned by reason thereof. It is quite reasonable that plaintiffs would not have made such improvements had they believed they had no right of way out to the county road. To permit the defendants to revoke the license under such circumstances would result in the perpetration of a fraud. Under and by virtue of the doctrine of equitable estoppel, defendants are precluded from revoking the parol license.

The decree is affirmed. Plaintiffs are entitled to costs and disbursements.