## KELLING v. UNITED STATES.

### No. 4372.

United States Court of Appeals,
Tenth Circuit.

Dec. 14, 1951.

Lester C. Arvin, Wichita, Kan., for appellant.

V. J. Bowersock, Asst. U. S. Atty., Topeka, Kan. (Lester Luther, U. S. Atty., Topeka, Kan., on the brief), for appellee.

Before HUXMAN, MURRAH and PICKETT, Circuit Judges.

HUXMAN, Circuit Judge.

An indictment of five counts was returned against appellant, Lawrence L. Kelling, in the United States District Court for the District of Kansas. Counts one and two charged violations of 15 U.S.C.A. § 77q(a) (1) [1] and counts three, four and five charged violations of 18 U.S.C.A. § 1341.[2] A jury was waived and trial was

1. 15 U.S.C.A. § 77q(a) (1)—"(a) It shall be unlawful for any person in the sale of any securities by the use of any means or instruments of transportation or communication in interstate commerce or by the use of the mails, directly or indirectly—(1) to employ any device, scheme, or artifice to defraud, * * *."

2. 18 U.S.C.A. § 1341—"Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises * * * for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Post Office Department, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined not more than $1,000 or imprisoned not more than five years, or both. * * *"

had to the court. Count four was dismissed upon motion of the Government. At the conclusion of the trial, the trial court made twenty-three separate findings of fact and based thereon concluded as a matter of law that appellant was guilty as charged on all counts. Sentence was imposed on all counts. This appeal challenges only the sufficiency of the evidence to sustain the judgment of the court.

The substance of the twenty-three separate findings by the court may be summarized in narrative form as follows. On or about January 23, 1948, Lawrence L. Kelling drove his personally owned Lincoln automobile from Denver, Colorado, via Colby, Kansas, to Scott City, Kansas, for the purpose of inducing one Phillip Sramek to invest some money in a mining venture near Walden, Colorado. Kelling was introduced to Phillip Sramek by one Edwin C. Murphy and had a conversation with him, during the course of which Kelling represented to Sramek that he had a lease on a coal mining property near Walden, Jackson County, Colorado, known as the "Marr Mine" and that the lease had been recorded in Colorado; that it was his purpose to organize a corporation to develop a coal mine and that such corporation would be organized within ninety days; that if Sramek would invest $5,000 with him the money would be used for the purpose of developing the Marr Mine and would be deposited in Kelling's name as Trustee in a Laramie, Wyoming, bank; that the money invested by Sramek would be returned to him within ninety days, payments being made to him at the rate of fifty cents per ton for each ton of coal taken from the mine and that in addition thereto Sramek would receive a share of stock, in the corporation to be organized, for each dollar invested; that thereupon Sramek gave to the appellant the sum of $5,000; that again on February 17, 1948, Kelling, accompanied by Murphy, went to Scott City in Kelling's Lincoln automobile and represented to Sramek that, in order to operate the mine and for the purposes of purchasing machinery and equipment to mine the coal, it would be necessary that they raise an additional $15,000; that Kelling represented to Sramek that he owned a dragline shovel located at Alcova Dam in Colorado, which was worth $40,000 and which would be used in the Marr Mine for the purpose of mining coal; that if Sramek would invest an additional $15,000, his money would be used to purchase the machinery and equipment for the mine.

The court found that Sramek agreed to and did pay Kelling an additional $15,000, for which he was to receive 20,000 shares of stock in the corporation to be organized; that a few days later Murphy went to Scott City, Kansas, and presented to Sramek a contract and asked him to sign it; that the contract embodied some of the terms discussed between Kelling and Sramek at their meeting on February 18, 1948 and particularly stated that the $20,000 invested by Sramek was to be used for the purchase of machinery and equipment for the Marr Mine; that about April 1, 1948, Kelling was introduced to one Kenneth L. Salmon of Denver, Colorado, by Edward Gerlach; that they went to Kelling's home and had a conversation; that Kelling represented to Salmon that he had a lease on a coal mine at Walden, Colorado; that a Mr. Sramek had put in $20,000 and that they had that amount available to work on, but that they needed additional capital to develop the mine; that he had an electric dragline worth $40,000, which would be used in developing the mine; that a corporation would be organized and, if Salmon would make an investment, he would receive one share of stock in the corporation for each dollar he invested and that in consideration of these statements Salmon did pay Kelling the sum of $2,000. The court found that the $5,000 invested by Sramek on January 23, 1948 was not deposited in the bank at Laramie, Wyoming, to the account of Lawrence L. Kelling, Trustee, and that no part of the money was spent in development of or for machinery and equipment for the Marr Mine but was used exclusively by Kelling for his own personal purposes; that the $15,000 invested by Sramek on February 17, 1948 and $1,900 of the $2,000 invested by Salmon was deposited by Kelling to his account as trustee in the First National Bank of Laramie, Wyoming, but that no part thereof was used to purchase ma-

chinery or equipment for the Marr Mine, but the major portion thereof was used by Kelling to purchase furs and jewelry for his wife, for a deep freeze and electric roaster for his home, for groceries, for personal loans to friends, for house rent, dues in his sportsmen associations, taxes, hotel accommodations, airplane transportation for rental of an oil well drilling rig, for attorney's fees, for wages of employees on oil drilling operations, for cash for his wife and daughter and himself and other personal expenses.

The court found that Kelling owned an interest in an electric dragline located at the Alcova Dam in Colorado, but that it was encumbered by a mortgage of $10,000; that a large number of the parts belonging thereto had been transported to Breckenridge, Colorado, and had been attached by the sheriff and that the value of the electrical dragline was considerably less than $40,000; that the representations made to Sramek and Salmon were false and were known by Kelling to be false at the time he made them; that they were made for the purposes of obtaining money from Sramek and Salmon in furtherance of a device and scheme to defraud them; that Kelling concealed from Sramek and Salmon the material fact that a large part of the money invested by them would be used by him for his own personal purposes.

The court further found that Kelling on the 18th day of February, 1948, having devised a scheme and artifice to defraud in the sale of securities hereinbefore described by the use of means and instruments in transportation in interstate commerce, employed said scheme and artifice to defraud and, in carrying out the same, transported by automobile bank draft No. 56030 of the First National Bank of Scott City, Kansas, in the sum of $2,500, and a personal check of Phillip Sramek in the amount of $2,500 from Colby, Kansas, to Denver, Colorado, and under the same conditions Kelling on or about February 13, 1948 transported himself by automobile from Denver, Colorado, to Colby, Kansas; that under the same conditions on March 2, 1948, the defendant, Lawrence L. Kelling, knowingly caused to be delivered to the First National Bank of Scott City, Kansas, by United States mail, a personal check drawn on the First National Bank of Scott City, Kansas, in the amount of $2,500, dated February 17, 1948, drawn by Sramek and payable to Lawrence L. Kelling, Trustee; that for the same purposes on or about April 3, 1948, Kelling knowingly caused to be delivered to the First National Bank of Scott City, Kansas, by United States mail, a personal check drawn on the First National Bank of Scott City, Kansas, in the amount of $2,500, dated March 17, 1948, drawn by Sramek and payable to Lawrence L. Kelling, Trustee.

The record evidence abundantly sustains the findings that the representations were made; that they were false and that appellant knew them to be false and untrue and that they were made for the purpose of effectuating his scheme to defraud; that Sramek and Salmon relied thereon to their detriment and loss, and that appellant used means and instruments of transportation in commerce and the United States mails in perpetrating the frauds complained of.

Appellant did not own a lease on the mine. At most, he had an agreement that at a future date it would be assigned to him, if the owner thereof consented to the assignment. Neither did he own a dragline shovel of the value of $40,000. Furthermore, removable parts of this shovel, such as it was, had been attached by the sheriff and had been removed therefrom. At no time did the appellant undertake to form a corporation. Although he represented that the money he obtained from his victims would be used for the purchase of machinery and equipment for the mine, he used it for purposes not connected with the enterprise, as is set out in the court's findings.

True, appellant offered some evidence which would support a contrary conclusion, but the court chose to disbelieve it, as the court was warranted in doing under the overwhelming weight of the evidence. Our sole function in this case is limited to determining whether there is substantial evidence to support the judgment of the court. In determining such question, we consider only the evidence fa-

vorable to the Government.[3] We have no difficulty in concluding that the findings and judgment of the court are amply sustained by the record.

Affirmed.

---

3. Madsen v. United States, 10 Cir., 165 F.2d 507; Carlson v. United States, 10 Cir., 187 F.2d 366; Graves v. United States, 10 Cir., 191 F.2d 579; Webb v. United States, 10 Cir., 191 F.2d 512.