Buck **WILCOXON**, Appellant,

v.

**UNITED STATES** of America,
Appellee.

No. 5156.

United States Court of Appeals
Tenth Circuit.

Feb. 20, 1956.

Rehearing Denied March 8, 1956.

Writ of Certiorari Denied
May 21, 1956.

See 76 S.Ct. 834.

Murrah, Circuit Judge, dissented.

Don L. Dickason and John D. Robb, Albuquerque, N. M. (Rodey, Dickason, Sloan, Mims & Akin, Albuquerque, N. M., was with them on the brief), for appellant.

Paul F. Larrazolo, U. S. Atty., Albuquerque, N. M. (Melvin L. Robins, Asst. U. S. Atty., Albuquerque, N. M., was with him on the brief), for appellee.

Before BRATTON, Chief Judge, and HUXMAN and MURRAH, Circuit Judges.

BRATTON, Chief Judge.

The indictment in this case containing two counts laid charges under 8 U.S. C. § 1324. The first count charged that Buck Wilcoxon transported Inocente Ortiz, an alien, into and through the State of New Mexico, the accused then and there knowing that the person being transported was an alien who had entered the United States in violation of law, and further knowing that the last entry of such alien into the United States oc-

curred less than three years prior to the time of transportation. And the second count charged like transportation of Herminio Porras, an alien. The defendant was found guilty on both counts; was sentenced to imprisonment on the first count; was sentenced to imprisonment on the second count, with the provision that the sentence be suspended and the defendant placed on probation; and was sentenced to pay a fine on each count. Aggrieved, the defendant brought the case here on appeal.

■ The judgment is challenged for want of substantial evidence to sustain the conviction. The evidence presented sharp conflicts. But in the trial of the conventional criminal case it is the province and function of the jury to observe the witnesses, to appraise their credibility, to weigh their testimony, to draw reasonable inferences from established facts, to resolve conflicts, and to determine the ultimate question whether the guilt of the accused has been established beyond a reasonable doubt. And on appeal from a conviction, the scope of review is limited to determining whether there was substantial evidence to support the verdict. Carlson v. United States, 10 Cir., 187 F.2d 366, certiorari denied 341 U.S. 940, 71 S.Ct. 1000, 95 L.Ed. 1367; Kelling v. United States, 10 Cir., 193 F.2d 299; Lunsford v. United States, 10 Cir., 200 F.2d 237. Viewed in the light of that frequently reiterated general rule, we think it is clear that the evidence adequately sustains the conviction.

■ The judgment is challenged on the further ground that the court erred in requiring appellant to disclose the substance of certain confidential communications between himself and his attorney. During his cross examination, appellant was asked whether in the course of the preliminary hearing upon the charges later embodied in the indictment in this case, he directed his attorney to propound certain questions to a witness for the Government. Appellant admitted that he directed his attorney

to ask the questions; that his attorney propounded the questions to the witness; and that the purpose in giving such directions to his attorney was to ascertain how far the witness would go in testifying to untruths. It is the general rule of ancient origin that confidential communications between attorney and client in the course of professional employment are privileged and cannot be used in evidence against the client. The rule is for the protection of the client in order that he may be free to disclose to his attorney matters of confidence and importance without fear that the trust will be violated. But the fact that a communication is made to an attorney does not necessarily under any and all circumstances make it privileged. In order to be privileged, a communication must be made in confidence of the relationship and under circumstances from which it may reasonably be presumed that it will remain in confidence. The protection does not extend to a communication which cannot properly be termed the subject of a confidential disclosure. And a statement or communication made by a client to his attorney with the intent and purpose that it be communicated to others is not privileged. In directing his attorney to propound the questions to the witness, it was the intent and purpose of appellant that the substance of such directions would be immediately repeated to the witness in the form of questions. It is manifest that in such circumstances, the directing of the attorney to ask the questions did not constitute a confidential communication within the purview of the general protective rule. Himmelfarb v. United States, 9 Cir., 175 F.2d 924, certiorari denied 338 U.S. 860, 70 S.Ct. 103, 94 L.Ed. 527; Rousseau v. Bleau, 131 N.Y. 177, 30 N.E. 52; Spencer v. Burns, 413 Ill. 240, 108 N.E.2d 413; Howsley v. Clark, 167 Okl. 371, 29 P.2d 947; Hill v. Hill, 106 Colo. 492, 107 P.2d 597; Baum v. Denn, 187 Or. 401, 211 P.2d 478; Solon v. Lichtenstein, 39 Cal.2d 75, 244 P.2d 907; In re Munsell's Guardianship, 239 Iowa 307, 31 N.W.2d 360.

Error is predicated upon asserted improper limitation of the cross examination of a certain witness for the Government. Cross examination is a right, not a mere privilege granted or withheld at the will of the court. But the extent of cross examination of a witness in respect to an appropriate subject of inquiry rests largely in the sound judicial discretion of the trial court. The discretion is to be exercised with due regard for the particular facts and circumstances. And the exercise of such discretion will not be disturbed on appeal unless it was clearly abused. Alford v. United States, 282 U.S. 687, 51 S.Ct. 218, 75 L.Ed. 624; Glasser v. United States, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680; Rose v. United States, 10 Cir., 128 F.2d 622, certiorari denied 317 U.S. 651, 63 S.Ct. 47, 87 L.Ed. 524; Dickson v. United States, 10 Cir., 182 F.2d 131. Without recapitulating the proceedings which give rise to the contention, it suffices to say that a painstaking examination of the record convinces us that no abuse of discretion occurred in connection with the cross examination of the witness and therefore the contention is without sustainable basis.

The remaining contention for consideration is that the action of the court in refusing to grant a new trial on the ground that two witnesses for the Government testified without the oath having been interpreted to them in Spanish constituted reversible error. The contention is argued on the assumed premise that the situation was tantamount in law to the witnesses giving testimony without the oath being administered to them in any form; and, without so deciding, the contention may be considered in that manner. Prior to the introduction of any evidence, the witnesses for the Government and those for appellant were called. Upon being called, they came forward and the clerk administered the oath to them all together. Inocente Ortiz and Herminio Porras were among those to whom the oath was administered in that manner. The oath was not interpreted into the Spanish language.

When Ortiz and Porras testified the questions and answers were interpreted from English into Spanish and from Spanish into English. Without any reference being made to the failure to interpret into Spanish the oath to such witnesses, each stated generally in the course of his testimony that he did not speak English. One ground of the motion for a new trial was the failure to interpret to such witnesses the oath in Spanish. Affidavits of appellant and his two attorneys were attached to the motion. In such affidavits, it was stated that at no time during the trial were the affiants aware of the fact that the oath was not interpreted to the two witnesses in Spanish. In the affidavit of one of the attorneys, it was further stated in substance that the first time the matter occurred to him was on the third day after completion of the trial. The failure to interpret the oath into Spanish was first called to the attention of the trial court in the motion for new trial. No reference was made to it prior to that juncture of the proceedings. The two-fold purpose of the oath is to bind the conscience of the witness and make him amenable to prosecution if he gives perjured testimony. But the administering of the oath to a witness may be waived.

It is to be observed that the motion for new trial for failure to interpret into Spanish the oath to the two witnesses was not predicated upon knowledge obtained after completion of the trial. Appellant knew the two witnesses prior to the time the oath was administered to them. He and his attorneys knew that the witnesses did not speak English sufficiently to carry on a conversation or testify in that language. He and his attorneys were present when the oath was administered to the witnesses. The failure to interpret the oath into Spanish to the two witnesses in question occurred in the presence of appellant and his attorneys. But the attention of the court was not called to it. Neither was the attention of the court directed to the omission by objection or otherwise at the time the two witnesses were plac-

ed on the stand and gave their evidence. Appellant and his attorneys remained silent in respect to it. And the witnesses were subjected to extended cross examination covering a wide range. But is is argued that after completion of the trial, one of the attorneys realized for the first time that the oath was not interpreted to such witnesses. In other words, it is said in substance that due to an awakened mental realization the attorney realized for the first time after completion of the trial that the oath had not been interpreted to the two witnesses. Being present, it was the duty of appellant and his attorneys to take notice of the several steps in the proceeding. People v. Krotz, 341 Ill. 214, 172 N.E. 135; Smith v. State, 81 Ga. 479, 8 S.E. 187. And that duty included notice of the manner in which the oath was administered to the witnesses. Appellant and his attorneys could not stand by quiescently and urge later that after completion of the trial they realized for the first time that the witnesses testified without the oath having been interpreted to them. Appellant waited too long to complain that the oath was not interpreted to such witnesses. By failing to bring the matter to the attention of the trial court in some manner until after completion of the trial, he effectively waived the right to seek a new trial on that ground. Beausoliel v. United States, 71 App.D.C. 111, 107 F.2d 292; State v. Hope, 100 Mo. 347, 13 S.W. 490, 8 L.R.A. 608; Goldsmith v. State, 32 Tex.Cr.R. 112, 22 S.W. 405; Moore v. State, 96 Tenn. 209, 33 S.W. 1046; Barnes v. State, 61 Tex. Cr.R. 37, 133 S.W. 887; St. Louis, Iron Mountain & Southern Railroad Co. v. Hairston, 125 Ark. 314, 188 S.W. 838; Messer v. State, 57 Okl.Cr. 38, 47 P.2d 218; Murphy Mortgage Co. v. Epp, 99 Kan. 706, 162 P. 1170; In re Da Roza's Estate, 82 Cal.App.2d 550, 186 P.2d 725; State v. Doud, 190 Or. 218, 225 P.2d 400; State v. Whiting, 173 Kan. 711, 252 P 2d 884; Brenton State Bank v. Heckmann, 233 Iowa 682, 7 N.W.2d 813; Pooley v. State, 116 Ind.App. 199, 62 N.E.2d 484;

State v. Melancon, 163 La. 435, 112 So. 37; Bassett v. Mechanics' Bank of New Haven, 116 Conn. 730, 166 A. 385.

The judgment is affirmed.

MURRAH, Circuit Judge (dissenting).

As this case comes to us, the defendant stands convicted and condemned on the testimony of two witnesses testifying through an interpreter after having taken an oath, the obligation of which they did not comprehend because they did not understand the language in which it was administered.

No one would gainsay the fundamental right of an accused to be convicted only on the oath or affirmation of his accusers. And, "In order that the ceremony of swearing the witness may be effective at all, it is certainly necessary that he understand something of the meaning of it. If he has no such understanding whatever, the form is idle; under such circumstances the witness is not sworn at all in any reasonable sense, or in contemplation of law. If he merely holds up his hand and nods his head in response to the formula propounded him, not understanding that in doing so he has assumed any additional obligation to tell the truth, or risk of punishment should he fail to do so, he has no more bound himself than if he were of unsound mind. The assent he yields, to be effective, must be an intelligent assent, and it cannot be intelligent if he has no idea of the meaning of what he is doing." Lee v. Missouri Pac. Ry. Co., 67 Kan. 402, 73 P. 110, 112, 63 L.R.A. 271.

It is assumed for the purposes of this case that an oath without understanding is no oath at all, but the conviction is affirmed on the ground of waiver for failure to timely object or bring the matter to the attention of the court. The cited authorities support this view but they take no account of the salutary rule of federal criminal procedure to the effect that plain errors or defects in the trial of a case affecting substantial rights of the defendant, are noticeable although they are not brought to the attention of the court. Rule 52(b) Federal Rules Criminal Procedure, 18 U.S.C.A. This rule is in recognition of the inescapable duty of a federal court to see that the trial is "conducted with solicitude for the essential rights of the accused." Glasser v. United States, 315 U.S. 60, 71, 62 S.Ct. 457, 465, 86 L.Ed. 680.

To be sure, the right or privilege, like any other right, may be intelligently waived, but I do not believe that it was deliberately and intelligently waived in this case. These witnesses were sworn en masse with other witnesses, and admittedly, it did not occur to the court or counsel that they had not been sworn until the third day after the trial of the case. If, through inadvertence or mistake, the witnesses were permitted to testify without an understanding of the sanctity of their oath, it is never too late to correct the error and I should not hesitate to so order it.

This indecorous situation demonstrates the propriety of having the oath administered to each witness after he has taken his place in the witness box. If the oath is to be more than an empty gesture; if it is a pledge to tell the truth with the help of God under penalty of vengeance of the law of God and man, it ought to be done at a time and place and in a manner which befits the sanctity and solemnity of the ceremony. It ought certainly to be done in a manner to bring home to the witness the solemn obligation it imposes. It obviously was not done in this case and I would reverse for a new trial.